**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| VIVINT, INC.,<br><br>                                    Plaintiff,<br><br>            v.<br><br>ALARM.COM INC.,<br><br>                                    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING, IN PART, ALARM.COM'S MOTION TO STAY**<br><br>Case No. 2:15-cv-00392<br><br>District Judge Clark Waddoups |

Before the court is Defendant Alarm.com Incorporated's Motion to Stay Pending Conclusion of *Ex Parte* Reexamination Proceedings, (ECF No. 235). On October 30, 2018, and November 5, 2018, the U.S. Patent and Trademark Office issued Final Office Actions in *ex parte* reexaminations rejecting nine of the seventeen claims asserted in this action as invalid under 35 U.S.C. § 103. Plaintiff Vivint, Inc. has stated that it intends to continue asserting these claims and will pursue appeals of the U.S. Patent and Trademark Office's decisions.

On November 9, 2018, Alarm.com filed its Motion to Stay. In its Motion, Alarm.com requested that the court grant a stay, either as to the entire case or as to the nine rejected claims. The court heard oral argument on the motion on November 28, 2018. As explained below, the court grants a temporary stay as to the nine rejected claims.

## **Legal Background**

### *Ex Parte* Reexamination

"[E]x parte reexamination is a curative proceeding meant to correct or eliminate erroneously granted patents." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1338 (Fed. Cir. 2013). The "reexamination statute" is found at 35 U.S.C. §§ 301–307. "The reexamination

statute" authorizes the United States Patent and Trademark Office (USPTO) to "reconsider patents of doubtful validity, and to cancel defectively examined and therefore erroneously granted patents." *Fresenius* 721 F.3d at 1338 (internal quotation marks omitted) (citations omitted).

"When a claim is determined to be invalid in reexamination, the reexamination statute requires the Director of the PTO to cancel a claim that is 'finally determined to be unpatentable.'" *Id.* at 1339 (quoting 35 U.S.C. § 307(a)). That statute provides:

> In a reexamination proceeding under this chapter, when the time for appeal has expired or any appeal proceeding has terminated, the Director will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable.

35 U.S.C. § 307(a). A patent owner may appeal the USPTO's rejection to the Patent Trial and Appeal Board (PTAB). *See* 35 U.S.C. § 134(b) ("A patent owner in a reexamination may appeal from the final rejection of any claim by the primary examiner to the Patent Trial and Appeal Board, having once paid the fee for such appeal."). If the PTAB upholds the USPTO's rejection, a patent owner may appeal to the Federal Circuit. *See* 35 U.S.C. § 141(b) ("A patent owner who is dissatisfied with the final decision in an appeal of a reexamination to the Patent Trial and Appeal Board under section 134(b) may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.").

*Inter Partes* Review

"In an" *inter partes* review (IPR), "a third party may seek cancellation of at least one claim based on [35 U.S.C. § 102 or 103] using only prior art patents or printed publications." Patent Case Management Judicial Guide, Third Edition § 14.2.5.6 (2016). "IPR may be requested by anyone who is not the patent owner, and who has not previously filed a declaratory

judgment action challenging the validity of the patent." *Id*. "The USPTO will grant IPR if the petition shows a 'reasonable likelihood' that the petitioner would prevail on at least one claim being challenged." *Id*. Relevant here, "IPR is handled by the PTAB . . . and appeals are taken directly to the Federal Circuit." *Id*.

## Procedural Background

Vivint Files Complaint Alleging Alarm.com Infringed Six Patents

Vivint filed this case on June 2, 2015. (ECF No. 2.) On June 10, 2015, Vivint filed an Amended Complaint. (ECF No. 15.)  In its Amended Complaint, Vivint alleged that Alarm.com infringed six patents—[1] the '123 Patent (Am. Compl. ¶ 26, ECF No. 15 at 5); [2] the '513 Patent (Am. Compl. ¶ 33, ECF No. 15 at 8); [3] the '654 Patent (Am. Compl. ¶ 39, ECF No. 15 at 10); [4] the '601 Patent (Am. Compl. ¶ 46, ECF No. 15 at 12); [5] the '727 Patent (Am. Compl. ¶ 53, ECF No. 15 at 14); and [6] the '713 Patent (Am. Compl. ¶ 60, ECF No. 15 at 15). The '601, '654, '123, and '513 patents belong to a family of patents known as the "Sandelman" patents. (*See* ECF No. 108 at 2.) The '727 patent and the '713 Patent are unrelated to the Sandelman patents. (*See* ECF No. 108 at 2.)

Petitions for *Inter Partes* Review and Motions to Stay

"Between September 24, 2015, and September 30, 2015, Alarm.com filed eight petitions for *inter partes* review ("IPR") with the PTAB . . . ." (ECF No. 40 at 3; *see also* ECF No. 67 at 13.) Among these, Alarm.com filed a petition for IPR review regarding Patent '513 on September 28, 2015. This petition was designated IPR2015-01997. In this petition, Alarm.com contended that claims 8–21 of the '513 patent were "unpatentable under 35 U.S.C. § 103(a) over the combination of" two prior patents—"Scadaware and Garton." (IPR2015-01997 Dkt. 13 at 33.)

On October 1, 2015, Alarm.com filed, in this court, its first Motion to Stay Pending *Inter Partes* Review. (ECF No. 40.)

Between October 30, 2015 and November 9, 2015, Alarm.com filed five more petitions for *inter partes* review with the PTAB. (*See* ECF No. 67 at 13.) Among these, Alarm.com filed a petition for IPR review regarding Patent '513 on November 2, 2015. This petition was designated IPR2016-00129. In this petition, Alarm.com contended that claims 10–12, 14, 17, and 18 of the '513 patent were unpatentable under 35 U.S.C. § 103(a), arguing that they were "rendered obvious over" two prior patents—"Johnson and Joao." (IPR2016-0129 Dkt. 13 at 33.)

On December 15, 2015, Magistrate Judge Wells entered an Order Denying Alarm.com's first Motion to Stay. (ECF No. 53.) Magistrate Judge Wells denied Alarm.com's Motion because, at that time, "it [was] unknown if the PTAB [would] grant [Alarm.com's] IPR petitions for review." (ECF No. 53 at 5; *see also* ECF No. 67 (indicating that the earliest date that the PTAB instituted review was March 24, 2016)).)

On April 7, 2016, the PTAB entered a Decision Denying Institution of *Inter Partes* Review in IPR2015-01997. (*See* IPR2015-01997 Dkt. 14.) The PTAB concluded that Alarm.com had "not demonstrated a reasonable likelihood that it would prevail in showing that independent claims 8, 15, and 19–21, or dependent claims 9–14 and 16–18, would have been obvious over the combination of Scadaware and Garton." (IPR2015-01997 Dkt. 14 at 34.)

On May 3, 2016, the PTAB entered a Decision Denying Institution of *Inter Partes* Review in IPR2016-00129. (IPR2016-00129 Dkt. 13.) The PTAB concluded, in part, that Alarm.com had "not demonstrated a reasonable likelihood that it would prevail in showing the unpatentability . . . of any of the challenged claims 10–12, 14, 17, and 18 as rendered obvious over Johnson and Joao." (IPR2016-00129 Dkt. 13 at 17.)

According to Alarm.com, "as of May 12, 2016, the PTAB [had] initiated IPR proceedings against five of the [then] six patents-in-suit before this Court . . . ." (ECF No. 60 at 6.) On May 23, 2016, Alarm.com filed, in this court, a Renewed Motion to Stay Pending *Inter Partes* Review. (ECF No. 60.)

One day later, on May 24, 2016, Alarm.com filed a third petition for IPR review with the PTAB regarding Patent '513. This petition was designated IPR2016-001091. In this petition, Alarm.com contended that claims 1–13, and 15–21 were unpatentable under 35 U.S.C. § 103(a), arguing that they were "rendered obvious by Shetty in view of the knowledge of a [person of ordinary skill in the art] and Joao." (*See* IPR2016-001091 Dkt. 1 at 19.) In this petition, Alarm.com argued:

> Shetty taught that users could remotely access and configure a message profile, and it would have been obvious to do so over the Internet. However, Shetty did not explicitly disclose the use of the Internet or a website. Joao, however, disclosed the use of a website in the same field of remote equipment monitoring as Shetty. As Joao taught the use of a website to provide control over its apparatus and to configure notifications, it would have been obvious to use the website of Joao in the system of Shetty, which provided identical remote monitoring functionality. Doing so would have provided the benefit of a user interface that could be accessed from any computing deviceable to access the world-wide web, and would have involved well known web programming techniques.

(IPR2016-001091 Dkt. 1 at 36.) Alarm.com also argued that "claims 8–13 and 15–21 were rendered obvious in view of the knowledge of a POSITA, Shetty, Joao, and Garton." (IPR2016-001091 Dkt. 1 at 64.)

On September 12, 2016, Magistrate Judge Wells entered an Order granting Alarm.com's Renewed Motion to Stay Pending *Inter Partes* Review. (ECF No. 99.)

On November 23, 2016, the PTAB entered a Decision Denying Institution of *Inter Partes* Review in IPR2016-001091 (IPR2016-001091 Dkt. 11.) In this decision, the PTAB noted that "the instant Petition represents [Alarm.com's] *third* petition specifically challenging each of

claims 1–21, [of Patent '513,] each of these claims having been challenged previously in Cases IPR2015-01997 *and* IPR2016-00129." (IPR2016-001091 Dkt. 11 at 9 (emphasis in original).) The PTAB agreed with Vivint's argument that Alarm.com used the PTAB's "decisions in the earlier cases as a roadmap for attempts to remedy deficiencies in its earlier petitions." (IPR2016-001091 Dkt. 11 at 10.) Indeed, the PTAB described Alarm.com's third petition as very likely being "a case of undesirable, incremental petitioning" in which Alarm.com was relying on the PTAB's earlier decisions to "fix[] deficiencies" that the PTAB had previously noted that were "within [Alarm.com's] capacity to avoid in the earlier" petitions. (IPR2016-001091 Dkt. 11 at 12.) More specifically, the PTAB noted that Alarm.com, "[i]n relying on Shetty, Joao, and Britton," "appears to be applying new references to replace Scadaware and Johnson, which it relied upon in" the two previously rejected petitions. (IPR2016-001091 Dkt. 11 at 11.)

The PTAB ultimately exercised its "discretion not to institute review" of Alarm.com's third petition—in large part based on a desire to save its resources. (*See* IPR2016-001091 Dkt. 11 at 13 ("The Board's resources would be more fairly expended on initial petitions, rather than on follow-on petitions . . . ."); *see also* (IPR2016-001091 Dkt. 11 at 14 ("For the reasons discussed above, and *especially given the limited resources of the Board*, we exercise our discretion not to institute review in this proceeding.") (emphasis added)).)

"[I]n March and May of" 2017, the PTAB "issued final written decisions for the . . . instituted IPR's." (ECF No. 108 at 2.) The PTAB "found that all of the challenged claims of the" '727 patent and the '713 patent—the non-Sandelman patents—"were shown to be unpatentable." (ECF No. 108 at 2-3.) A number of claims for the Sandelman patents were found to also not be patentable. (*See* ECF No. 106 at 2.) Relevant here is the PTAB's May 2, 2017 Final Written Decision regarding Patent '601. (Final Written Decision ("FWD") IPR-2016-00116.)

<u>The PTAB's May 2, 2017 Final Written Decision</u>

In its Final Written Decision, the PTAB noted that "[t]he '601 patent describes systems and methods for monitoring remote equipment . . . ." (FWD IPR-2016-00116 at 4.) The PTAB further noted that "[a]ccording to the '601 patent, prior art systems were limited . . . ." (FWD IPR-2016-00116 at 4.) "The '601 patent purportedly solve[d] these [limitations] by describing a system for remotely monitoring electrical or mechanical equipment that can deliver fault notification messages to different individuals for different fault conditions via different electronic media, and in which a customer may modify its message profile interactively." (FWD IPR-2016-00116 at 4–5.) Relevant here, the PTAB also included one of Patent '601's claim limitations: "a method of monitoring remote equipment comprising the step[ ] of . . . enabling a user to remotely configure or modify a user-defined message profile . . . ." (FWD IPR-2016-00116 at 6.)

In its Final Written Decision, the PTAB also included a section titled "Scope and Content of the Prior Art," and included an "Overview of Shetty." (FWD IPR-2016-00116 at 24.) Shetty is a patent that was issued on September 15, 1998—before the Sandleman patents. (*See* FWD IPR-2016-00116 at 8.)

> Shetty discloses a method for providing information relating to a machine to a user. The method includes the steps of sensing predetermined events relating to the machine, producing corresponding event signals, delivering the event signals to a remote site, comparing the event signals to a profile of events corresponding to the user, and delivering a notification signal to the user if the event signals match the profile. Shetty explains that computers and electronics are becoming increasingly common on many machines. Shetty provides, as an example, that earthmoving machines now include many on-board sensors for recording parameter data during operation, and that on-board controllers also may calculate parameters of the machine based on sensor data. Shetty further explains that, with the large increase in the number of sensors and data being collected, the amount of data to be analyzed becomes unmanageable, and additionally, different persons, for example, the operator, the owner, etc. may have need for different information.

(FWD IPR-2016-00116 at 24 (internal quotation marks and citations omitted).)

The PTAB also included "Figure 1 of Shetty:" (FWD IPR-2016-00116 at 25.)



"Figure 1 is a block diagram of an apparatus adapted for performing the method provided by Shetty." (FWD IPR-2016-00116 at 25.) According to the PTAB, "Shetty . . . teaches that user profile database 106 contains information relating to all users, including a user profile that defines which events require that the user be notified." (FWD IPR-2016-00116 at 26.) According to the PTAB, "[u]ser interface 110 allows a user to access user profile database 106 and input information." (FWD IPR-2016-00116 at 26.)

Vivint argued to the PTAB that "Shetty's teaching of accessing user profiles stored in user profile database 106 does not teach or suggest enabling a user to 'remotely' 'configure a user-defined message profile.'" (FWD IPR-2016-00116 at 31.) More specifically, Vivint argued that "Shetty is silent as to whether a user may access user profile database 106 from . . . remote work stations via user interface 110." (FWD IPR-2016-00116 at 39.) Vivint also argued that "Shetty does not teach whether access is local or remote, nor does it disclose whether access is

read-only or allows for user modification." (FWD IPR-2016-00116 at 31.)

The PTAB ultimately rejected Vivint's arguments. (*See* FWD IPR-2016-00116 at 42–44.) The PTAB noted, "[a]s an initial matter," that "although Shetty does not "disclose explicitly whether user interface 110 is local to, or remote from, warning manager 100, Figure 1 of Shetty . . . clearly illustrates that user interface 110 is separate from and, therefore, remote from warning manager 100." (FWD IPR-2016-00116 at 42.) The PTAB found, "[b]ased on the orientation of elements illustrated in Figure 1 of Shetty," "that user interface 110 is remote from warning manager [100] . . . ." (FWD IPR-2016-00116 at 42.)

The PTAB stated that this finding was "reinforced further by Alarm.com's position as to how Figure 4 of Shetty and its corresponding description of a user remotely accessing data stored on either a database server or remote work station, together with Figure 1 of Shetty and its corresponding description of a user accessing user profile database 106 via user interface 110, teaches or suggests remote user access to user profile database 106 via user interface 110." (FWD IPR-2016-00116 at 43.) "Figure 4 of Shetty, reproduced below, illustrates a second industrial application or embodiment of the invention described in Shetty." (FWD IPR-2016-00116 at 43.)



The PTAB found, "[b]ased on Shetty's Figure 4," "that Shetty teaches at least one embodiment that allows a user to access data stored on either a database server or work station via one or more additional remote works stations." (FWD IPR-2016-00116 at 44.) The PTAB determined that "at a fundamental level, access of this type is nothing more than remote access." (FWD IPR-2016-00116 at 44.) "Applying this teaching of remote access in one embodiment of Shetty to its explicit disclosure of a user accessing user profile database 106 via user interface 110 . . . [the PTAB] agree[d] with Alarm.com that it present[ed] sufficient argument and evidence demonstrating that a user may remotely access user profile database 106 via user interface 110 . . . ." (FWD IPR-2016-00116 at 44.) "In summary, Alarm.com presented sufficient argument and supporting evidence demonstrating that Shetty teaches or suggests 'remotely configuring a user-defined message profile . . . .'" (FWD IPR-2016-00116 at 44.)

Court Lifts the First Stay

On June 23, 2017, the parties filed a Joint Proposal in which they requested that the court lift the stay. (*See* ECF No. 116 at 2.) The Joint Proposal also provided that "Vivint will continue to assert the following patents and claims: U.S. Patent 6,717,513 (claims 1, 3, 4, 5, 6, 7, 8, 12); U.S. Patent 6,462,654 (claims 17, 18, 22, 25, 28); U.S. Patent 6,535,123 (claims 3, 18); U.S. Patent 6,147,601 (claims 19, 42)." (ECF No. 116 at 2.) It also provided that "Vivint will not pursue claims in the following patents: U.S. Patent 6,924,727; U.S. Patent 7,884,713." (ECF No. 116 at 2.) In other words, Vivint proceeded with a total of seventeen claims from the '601, '654, '123, and '513 Patents—the Sandelman patents. On June 26, 2017, Magistrate Judge Wells entered an order lifting the stay. (ECF No. 117 at 3.)

Appellate Challenges

"Vivint appealed the IPR decisions against it to the U.S. Court of Appeals for the Federal

Circuit . . . and Alarm.com cross appealed as to the claims which were not found unpatentable."[1] (ECF No. 235 at 5.)

<u>The *Ex Parte* Reexaminations</u>

"In August of 201[7], Alarm.com filed requests for *ex parte* reexamination of the '513 Patent and the '601 Patent with the USPTO." (ECF No. 235 at 5; *see also* ECF No. 233-1 at 71 (indicating that Alarm.com "file[d] [for] reexamination" in "August, 2017").) According to Vivint, Alarm.com's "requests for *ex parte* reexamination repackaged [Alarm.com's] rejected IPR petitions by using the same prior art in the same combinations with largely the same arguments." (ECF No. 241 at 7.) Nevertheless, the USPTO ordered "*ex parte* reexamination" "[o]n September 7, 2017" for "all claims" of the '513 Patent. (ECF No. 233-1 at 4.) The USPTO also appears to have ordered *ex parte* reexamination on or around September 22, 2017 for claims "3, 16, 24, 32, 42[,] and 43 of" the '601 Patent. (*See* ECF No. 233-2 at 4.) The USPTO's reexaminations included nine of the seventeen claims that Vivint is asserting in this case. (*See* ECF No. 235 at 5.)

"In June and July 2018, the USPTO issued Initial Office Actions rejecting all the claims in reexamination." (ECF No. 235 at 5.) Following the Initial Office Actions, it appears that "in-person interview[s]" occurred with each of the PTO Examiners. (*See* ECF No. 233-1 at 64.) Regarding the '513 Patent, the interview occurred on August 22, 2018. (*See* ECF No. 233-1 at 64.) It is unclear when the interview occurred regarding the '601 Patent.

It appears that during the August 22, 2018 interview, Vivint presented a power point presentation to the PTO Examiner. (*See* ECF No. 233-1 at 67.) In this power point, Vivint included a slide of "Why [the] '513 Patent is Patentable." (ECF No. 233-1 at 73.) One reason

---

[1] "The appeals of the IPR decisions concerning the '601 Patent, '654 Patent and '123 Patent are pending; oral argument was held on December 3, 2018. The pending appeals concern, *inter alia*, the eight claims asserted by Vivint in this Court that are not subject to *ex parte* reexaminations." (ECF No. 235 at 5.)

Vivint gave was that "Shetty fails to teach . . . [r]emotely, rather Shetty only teaches local." (ECF No. 233-1 at 73.) Vivint further argued that the '513 Patent was the "[f]irst system to 'enable customers and contractors to **enter or modify** . . . information easily' e.g, **from remote locations.**" (ECF No. 233-1 at 82 (emphasis in original).) And Vivint stated that "Shetty does not disclose user configuration/modification that is **remote**." (ECF No. 233-1 at 91 (emphasis in original).)

Additionally, Vivint argued to the USPTO that "Shetty is not obvious with Joao." (ECF No. 233-1 at 73.) According to Vivint, Joao is a patent relating to "a car alarm system." (ECF No. 233-1 at 108.) Joao's patent number is "US 5,917,405 A." (ECF No. 233-1 at 4.) This patent appears to have issued on June 29, 1999. Vivint argued that "[t]he combination of Shetty and Joao is improper." (ECF No. 233-1 at 107.) Vivint further argued that "the combination with Joao would necessitate a change of principle of operation of Shetty—making the combination non-obvious." (ECF No. 233-1 at 108.)

Regarding the '513 Patent, it appears Vivint filed a written response to the PTO Examiner's Initial Office Action on September 12, 2018, including arguments and a declaration, which the PTO Examiner considered. (*See* ECF No. 233-1 at 4.) Regarding the '601 Patent, it appears that Vivint "filed a response" to the Initial Office Action on September 20, 2018, "including arguments and a declaration" which the PTO Examiner considered. (*See* ECF No. 233-2 at 4.)

Cross-Motions for Claim Construction

On August 3, 2018, the parties, in this court, completed briefing on their cross-motions for claim construction. (*See* ECF Nos. 191, 195.) A total of ten claim terms are at issue in the parties' cross-motions for claim construction. (*See* ECF No. 241 at 9 ("Of ten claim terms to be

construed . . . .").) Relevant here are two disputed terms. The first is "message generating means for generating an incoming message corresponding to the detected state of the remote equipment." (ECF No. 195 at 11.) This term is found in claims 8 and 12 of Patent '513. The second term is "normalizing the incoming message to form a corresponding normalized message having a predetermined uniform format." (ECF No. 195 at 25.) This term is found in claim 42 of Patent '601.

<u>Alarm.com's Motion Partial Summary Judgment of Invalidity</u>

On September 21, 2018, Alarm.com filed its Reply in Support of its Motion for Partial Summary Judgment of Invalidity. (ECF No. 222.) Relevant here, Alarm.com argued that claims 8 and 12 of the '513 Patent are indefinite and therefore invalid. (*See* ECF No. 174 at 10.)

<u>USPTO's October 30, 2018 Final Office Action</u>

On October 30, 2018, the USPTO issued a Final Office Action regarding the '513 Patent. (*See* ECF No. 235 at 5; *see also* ECF No. 233-1 at 2.) The Patent Examiner rejected "claims 1–7" of the patent "as being unpatentable over Shetty in view of Joao." (ECF No. 233-1 at 8 (emphasis in original removed).) The Patent Examiner also rejected claims 8–13 and 15–21 "as being unpatentable over Shetty in view of Joao and Garton." (ECF No. 233-1 at 18.) These rejections included all claims in this case—claims 1, 3–8, and 12.

In the Final Office Action, the USPTO rejected Vivint's arguments that "Shetty fails to teach . . . [r]emotely, rather Shetty only teaches local." (ECF No. 233-1 at 73.) The Patent Examiner concluded that "Shetty teaches 'remotely.'" (ECF No. 233-1 at 49 (emphasis in original removed).) The "Examiner maintain[ed] that Shetty teaches enabling a user to 'remotely' configure or modify user profiles . . . ." (ECF No. 233-1 at 49.) The Examiner also noted that this position was "consistent with the one[] taken by the PTAB in IPR-2016-00116

Decision . . . ."[2] (ECF No. 233-1 at 49 n. 4.) "Although IPR-2016-00116 Decision is directed to 601 Patent rather than 513 Patent, 601 Patent likewise recites claim limitations such as 'enabling a user to remotely configure or modify a user defined message profile' (601 Patent, claim 1)." (ECF No. 233-1 at 49 n. 4.)

The USPTO Patent Examiner also rejected Vivint's arguments regarding the combination of Shetty and Joao. (*See* ECF No. 233-1 at 53.) The Patent examiner concluded that "[t]he teachings of Joao are combinable with Shetty." (ECF No. 233-1 at 53 (emphasis in original removed).) The Patent Examiner "maintain[ed] that it would have been obvious to a person of ordinary skill in the art to enable a user to remotely send command messages to the remote equipment via the computer server as suggested by Joao in the method and system disclosed by Shetty . . . ." (ECF No. 233-1 at 53.)

---

[2] Both the PTO and the PTAB concluded that Shetty teaches or discloses remotely configuring a message profile. *Compare* (ECF No. 233-1 at 49 ("Examiner maintains that *Shetty teaches enabling a user to 'remotely' configure or modify user profiles . . . .*") (emphasis added) *with* (FWD IPR-2016-00116 at 42) ("In summary, Alarm.com has presented sufficient argument and supporting evidence demonstrating that *Shetty teaches or suggests 'remotely configuring a user-defined message profile . . . .*'") (emphasis added).)

The PTO and the PTAB both used very similar reasoning in helping to reach their conclusions that Shetty teaches remotely. They both reasoned that Figure 1 of Shetty supports that conclusion in that it visually demonstrates that "user interface 110" is remote from "databases 104, 106, 108." *Compare* (ECF No. 233-1 at 50 ("Examiner notes that Shetty already shows user interface 110 is separate from and remote from databases 104, 106, 108 in warning manager 100. Specifically, Figure 1 shows user interface 110 *outside* of the dotted line defining warning manager 100 . . . Given that mobile machine 118, email report 114, pager report 116, and facsimile report 122 are also shown outside the warning manager 100 in Figure 1, one in the art would understand that the user interface 110 is likewise remote from the databases in warning manager 100.") *with* (FWD IPR-2016-00116 at 42 ("Figure 1 of Shetty . . . clearly illustrates that user interface 110 is separate from and, therefore, remote from warning manager 100 . . . Based on the orientation of elements illustrated in Figure 1 of Shetty, we find that user interface 110 is remote from warning manager 110 because that is consistent with how both-off board information manager 122 and mobile machine 118 are shown as being remote from warning manager 100.").)

Both the PTO and the PTAB also relied on Figure 4 of Shetty to help reach this conclusion. *Compare* (ECF No. 233-1 at 50 ("Shetty clearly discloses that the data in the databases, including the user profile database, can be accessed by users on any of computers 414, 416, 418, 420, and 422 shown in the exemplary embodiment Figure 4." *see also* (ECF No. 233-1 at 53 ("even if only Shetty's explicitly described 'remote work stations' 420 and 422 are considered truly remote from database server work station 406, Shetty clearly discloses that 'users can also access the data stored on the third work station 406 . . . via the first and second remote work stations 420 and 422" (quoting Shetty, column 4, lines 8-10) *with* (FWD IPR-2016-00116 at 44 ("Based on Shetty's Figure 4 and its corresponding description, we find that Shetty teaches at least one embodiment that allows a user to access data stored on either a database server or work station via one more additional remote work stations.").)

<u>USPTO's November 5, 2018 Final Office Action</u>

On November 5, 2018 the USPTO issued a Final Office Action regarding the '601 Patent. (*See* ECF No. 235 at 5; *see also* ECF No. 233-2 at 2.) Of Patent '601's rejected claims, only claim 42 is at issue in this case. The Patent Examiner rejected claim 42 "as being unpatentable over Shetty in view of . . . Wewalaarachchi." (ECF No. 233-2 at 12.)

<u>Alarm.com's Motion to Stay Pending Conclusion of *Ex Parte* Reexamination Proceedings</u>

On November 9, 2018, Alarm.com filed its Motion to Stay. (ECF No. 235.) In this Motion, Alarm.com "respectfully request[ed] that the Court grant a stay, either as to the entire case or as to the nine claims rejected by the USPTO, pending completion of Vivint's appeals." (ECF No. 235 at 4.) Alarm.com argued that a stay would simplify the issues in this case, (ECF No. 235 at 6) that the case is in a relatively early stage of litigation, (ECF No. 235 at 8) and that a stay would not cause Vivint undue prejudice. (ECF No. 235 at 9.) Alarm.com also argued that "a stay of the entire case would be warranted due to the close relationship between the '513 Patent, the '601 Patent and the remaining patents-in-suit and the overlapping issues among the nine rejected claims and the eight remaining claims asserted by Vivint." (ECF No. 235 at 10.) Alarm.com further noted that "there is a great deal of overlap in claim elements, and therefore litigation issues between the '513 Patent, the '601 Patents and the other patents asserted in this case." (ECF No. 235 at 11.)

On November 15, 2018, Vivint filed its Opposition to Alarm.com's Motion to Stay. (ECF No. 241.) Vivint argued that a stay would not simplify the issues before the court, (ECF No. 241 at 11) that a second stay would unduly prejudice it, (ECF No. 241 at 13) and that the stage of litigation does not favor a stay. (ECF No. 241 at 15.) Vivint also noted that if it "obtains judgment in this action on the" nine claims the USPTO recently rejected before the "appeals of

the PTO office actions are exhausted," "Vivint will have an enforceable money judgment, regardless of the claims' status." (ECF No. 241 at 14 (citation omitted).)

On November 16, 2018, Alarm.com filed a Reply. (ECF No. 243.) Alarm.com argued that the court should "stay this litigation," at least for "an initial period" of "three to six months." (*See* ECF No. 243 at 6.) Alarm.com argued that a stay of this length "could be very beneficial in terms of clarification of the status of the nine finally rejected claims." (ECF No. 243 at 7.) Alarm.com reasoned that "[i]f the Federal Circuit affirms the PTAB's invalidation decisions, that event will make it extremely unlikely that Vivint can obtain a reversal of the recent Final Rejections [by the USPTO], because the grounds now pending before the Federal Circuit are substantially the same as the grounds upon which the Examiners rejected the nine claims in the *ex parte* reexaminations." (ECF No. 243 at 6.) The "same grounds" that Alarm.com referred to appear to be "whether the prior-art Shetty patent discloses remote configuration of user-defined message profiles." (*See* ECF No. 243 at 7–8 ("the primary issue in the *ex parte* reexaminations—whether the prior-art Shetty discloses remote configuration of user-defined message profiles—will likely be decided by the Federal Circuit on appeal from the IPR decisions concerning the '601, '654, and '123 Patents in the next two to three months"; *see also* ECF No. 243 at 8 n. 3 ("Vivint's main argument for patentability in these *ex parte* reexaminations was the same as in the IPRs of the '601, '654, and '123 Patents—that Shetty does not disclose remote configuration of user-defined message profiles—and the PTAB has already rejected that argument.")).)

Oral Argument

The court heard oral argument on the Alarm.com's Motion to Stay Pending Conclusion of *Ex Parte* Reexamination Proceedings on November 28, 2018. (*See* ECF No. 247.) The parties

disagreed about the degree to which the Federal Circuit's upcoming decision would provide guidance on the likelihood that the nine recently invalidated claims would be resurrected on appeal.

Alarm.com's Argument

Alarm.com's counsel began oral argument by providing background of the case, stating the he believed it would be "relevant to what the future may hold for the nine recently invalidated claims." Alarm.com's counsel then stated that "the nine invalidated claims are" "very unlikely to come back to life" for "two primary reasons."

First, Alarm.com's counsel argued that "Vivint has had ample opportunity to argue about these issues." "Vivint has repeatedly made the same" "fundamental argument"—that Vivint "believes Shetty does not disclose remote configuration of the message profile on the central computer, and the PTAB disagreed with them, and the Patent Office disagreed with them."

Second, Alarm.com's counsel argued that "the PTAB in the *inter partes* review proceedings found as a matter of fact that the Shetty prior art patent discloses remote configuration of that message profile and is prior art that discloses most of what's in the Sandelman Patents, they found that as a matter of fact and there was substantial evidence supporting that conclusion, and that's what's going to be argued to the Federal Circuit on Monday, [December 3, 2018] they'll review that finding of fact" "under a substantial evidence standard." He continued, "they are very likely" "to affirm that conclusion of the PTAB, and if the Federal Circuit does in fact" "affirm that factual finding of the PTAB," "**that will be effectively conclusive with respect to the reexaminations of the nine recently invalidated patents** because Shetty is also the key issue in this issue of remote configuration." He continued, "it is also the key argument on the reexaminations and the Federal Circuit's opinion will be at

minimum *stare decisis*, I would argue it in fact will be collateral estoppel with respect to Vivint trying to argue that Shetty doesn't disclose remote configuration. That issue will be done with after the Federal Circuit rules."

<u>Vivint's Argument</u>

At oral argument, Vivint's counsel responded to Alarm.com's argument that "the nine invalidated claims are" "very unlikely to come back to life." Vivint's counsel also discussed the PTAB's prior decisions not to institute Alarm.com's petitions for IPR review.

<u>Vivint's Response to Alarm.com's Argument</u>

Vivint's counsel began by saying that the simplification issue goes to Alarm.com's argument that "these nine claims dead claims walking." Vivint's counsel continued:

> And they're dead claims walking, we are told, because the Patent Office decided that Shetty disclosed this feature of remote configuration of user profiles. And the PTAB also came to that conclusion during the reexams. So the PTAB decided that Shetty discloses this feature, and so did the Patent Office, and the logic is therefore, 'the PTAB is going to affirm the rejection of these claims.' That logic couldn't be any more false. And it's false because the claims . . . before the examiner in the patent office involved not just Shetty, but a combination of Shetty and other references. The idea is . . . Alarm.com tells the patent office, 'Shetty has some of the limitations, but not all. These other two patents fill in the gaps. And together, that combination of references get you over the finish line. These claims are invalid.'
>
> That's what happened in the Patent Office for these nine claims. Shetty was just one reference that was used. Now, given Alarm.com's arguments, it must be that the Patent office has already determined that the other references, aside from Shetty, must have disclosed all of the limitations because the logic is that . . . 'if they agreed on Shetty and therefore there's gonna be a rejection, . . . the PTAB must have [also] considered these other references.' Wrong. It is a question of first impression, to the PTAB, as to whether the references that Shetty plus others are sufficient to cover all of the limitations in the asserted claims. A matter of first impression. That's a critical point because otherwise you would think, 'wow once we know what's going to happen with Shetty, game over for these almost dead patents.' Not true.

<u>Vivint's Argument Regarding Alarm.com Having Already 'Taken Its Best Shot' With the PTAB</u>

In support of its argument against the court staying the case, Vivint's counsel pointed to

the PTAB's previous decisions not to institute *inter partes* review. Vivint's counsel argued:

> the fact is that Alarm.com took its best shot in the IPRs and they lost. For the nine claims at issue . . . Alarm.com sought to . . . invalidate those claims, to institute a proceeding in the IPR, multiple times—three times. Two of those times, the PTAB said, 'no, you did not put forward sufficient evidence, because you need to show a substantial likelihood that the claims are invalid', that's the test the PTAB applies to decide whether to institute an IPR or not. The PTAB twice said, 'you failed on the merits, Alarm.com.' It was only the third one where the . . . PTAB said 'enough is enough, this is a serial petition, three times is enough, we're not even going to consider your third petition.' So the PTAB has addressed these nine claims and refused to find that there was sufficient evidence to invalidate them. Hardly dead claims walking.

**<u>Analysis</u>**

Alarm.com requests that the court "grant a stay, either as to the entire case or as to the

nine claims rejected by the USPTO, pending completion of Vivint's appeals." (ECF No. 235.) As

explained in more detail below, the court grants a limited stay pending the upcoming decision of

the Federal Circuit—but only as to the nine claims rejected by the USPTO.

"Courts have inherent power to manage their dockets and stay proceedings, including the

authority to order a stay pending conclusion of a USPTO reexamination." *Nautilus, Inc. v. ICON

Health & Fitness, Inc.*, No. 1:17-CV-00154-DN, 2018 WL 4215095, at \*2 (D. Utah Sept. 4,

2018) (internal quotation marks omitted) (citation omitted). "And there is a liberal policy in

favor of granting motions to stay proceedings pending the outcome of USPTO reexamination

proceedings." *Id*. (internal quotation marks omitted) (citation omitted). "The three factors courts

routinely employ in determining whether to stay a patent infringement action pending

reexamination are: (1) whether a stay will simplify the issues in question and trial of the case; (2)

whether discovery is complete and a trial date has been set; and (3) whether a stay would unduly

prejudice or present a clear tactical disadvantage to the non-moving party." *Id.* (internal quotation marks omitted) (citation omitted).

1. Simplification

As an initial matter, the court addresses (a) Vivint's argument regarding Alarm.com having already taken "its best shot to invalidate" the asserted claims and (b) Alarm.com's argument that the Federal Circuit's upcoming decision will be "effectively conclusive" with respect to the reexamination of the nine recently invalidated claims.

a. Vivint's Argument that Alarm.com Has Already Taken "Its Best Shot"

At oral argument, Vivint presented a power point presentation to the court. In this power point presentation, Vivint stated that "Alarm.com already took its best shot to invalidate the asserted claims—and lost." Vivint noted that "[t]he PTAB . . . rejected Alarm.com's proposed rejections of claims 1, 3–8, and 12 in the '513 patent three times, two of which were on substantive grounds." In its Opposition, Vivint also stated that Alarm.com, in its requests for *ex parte* reexaminations with the USPTO, "repackaged" its "rejected IPR petitions by using the same prior art in the same combinations with largely the same arguments." (ECF No. 241 at 7.) Vivint further stated that "[i]n contrast to IPR decisions, which are rendered by panels of three PTAB judges, each office action was issued by a single [PTO] examiner . . . ." (ECF No. 241.)

Vivint appears to invite the court to infer that if the PTAB receives Vivint's appeal of the PTO Examiner's final rejections of the nine invalidated claims, that the PTAB will likely overturn the PTO Examiner's rejections. This is because the PTAB already rejected Alarm.com's previous petitions for IPR which used the "same prior art in the same combinations." (ECF No. 241 at 7.)

The court finds it important to note that, regarding Patent '513, the PTO Examiner rejected claims 1, 3–7 of Patent '513 based on Shetty in view of Joao, and claims 8 and 12 of Patent '513 based on Shetty in view of Joao and Garton. (ECF No. 233-1 at 8, 18.) But when the PTAB rejected Alarm.com's petitions for IPR review on "substantive grounds," the prior art at issue was not Shetty in view of Joao and Garton. For example, the prior art at issue in IPR2015-01997 was Scadaware and Garton. (*See* IPR2015-01997 Dkt. 14 at 34.) And the prior art at issue in IPR2016-00129 was Johnson and Joao. (IPR2016-00129 Dkt. 13 at 17.)

It was not until Alarm.com's third petition for IPR review that Alarm.com used the "same prior art in the same combinations." (ECF No. 241 at 7) In other words, it was not until Alarm.com's third petition for IPR review that Alarm.com argued that Patent '513 was invalid in light of the combinations of Shetty and Joao or Shetty, Joao, and Garton. (*See* IPR2016-001091 Dkt. 1 at 19.) But the PTAB's decision denying institution of *inter partes* review in IPR2016-001091 was *not* on substantive grounds. (*See* IPR2016-001091 Dkt. 11 at 14.) Instead, the PTAB declined to institute review largely out of a concern to preserve its resources. (*See* IPR2016-001091 Dkt. 11 at 14) ("For the reasons discussed above, and *especially given the limited resources of the Board*, we exercise our discretion not to institute review in this proceeding.") (emphasis added).)

Because the PTAB's decision not to institute IPR2016-001091 was not on substantive grounds, (Alarm.com's only petition using the same combination of prior art that the PTO Examiner considered when he rejected all of Patent '513's claims), the PTAB's decision sheds little light on whether the PTAB will overturn the PTO Examiner's rejections. In fact, one of the PTAB's statements in its decision not to institute may give reason to think just the opposite. The PTAB stated that Alarm.com's third petition relied "on the PTAB's earlier decisions" "to fix[]

deficiencies" that the PTAB previously noted. This could be considered evidence that the PTAB may uphold the PTO examiner's recent rejections because it may be that Alarm.com used the PTAB's guidance to correct previous deficiencies. Regardless, the court declines to infer, based on the PTAB's prior decisions denying institution of *inter partes* review, that the PTAB will overturn the PTO examiner's rejections.

     b.   <u>Alarm.com's Argument that the Federal Circuit's Upcoming Decision Will be "Effectively Conclusive"</u>

In its Reply, Alarm.com reasoned that "[i]f the Federal Circuit affirms the PTAB's invalidation decisions, that event will make it extremely unlikely that Vivint can obtain a reversal of the recent Final Rejections [by the USPTO], because the grounds now pending before the Federal Circuit are substantially the same as the grounds upon which the Examiners rejected the nine claims in the *ex parte* reexaminations." (ECF No. 243 at 6.) At oral argument, Alarm.com's counsel made the same argument, stating that "if the Federal Circuit" does affirm the PTAB's finding that Shetty discloses remote configuration, that "that will be **<u>effectively conclusive</u>** with respect to the reexaminations of the 9 recently invalidated patents because Shetty is also the key issue in" the issue of remote configuration regarding Patent '513.

As noted above, Vivint's counsel responded to Alarm.com's argument. Vivint argued that Alarm.com's argument relies on "false logic" "because the claims . . . before the examiner in the patent office involved not just Shetty, but a combination of Shetty and other references." The PTAB, on the other hand, only considered Shetty.

The court agrees with Vivint that the Federal Circuit's upcoming decision will not be "effectively conclusive" with respect to the reexaminations of the 9 recently invalidated patents because the Federal Circuit's upcoming decision will not address whether it would have been obvious to a person of ordinary skill in the art to combine Shetty with Joao, or Shetty with Joao

and Garton. In order to invalidate a patent's claim based on prior art, the prior art must disclose each of the claim's limitations. In invalidating each of the relevant claims of Patent '513, the PTO Examiner relied on some combination of Shetty and Joao or Shetty, Joao, and Garton. The PTO Examiner did not invalidate any of '513 Patent's claims based exclusively on Shetty. In other words, not a single claim was invalidated on the basis that Shetty alone disclosed each of the limitations—the PTO Examiner had to rely on Joao or Garton to, in Vivint's words, "fill in the gaps."[3]

Unlike the PTO Examiner's Final decision invalidating all claims of the '513 Patent based on a combination of Shetty and Joao/Garton, nowhere in the PTAB's May 2, 2017 Final Written Decision does the PTAB address whether it would have been obvious to combine Shetty with Joao or Garton. (*See* FWD IPR-2016-00116.) It is for this reason that the upcoming Federal Circuit decision will not be "effectively conclusive" with respect to those limitations of the '513 claims that do not involve Shetty.

That is not to say that the Federal Circuit's upcoming decision will not be instructive to this court. As noted in footnote 2 above, both the PTO and the PTAB concluded that Shetty teaches or discloses remotely configuring a message profile. *Compare* (ECF No. 233-1 at 49) *with* (FWD IPR-2016-00116 at 42.) And, as noted in footnote 2 above, the PTO and the PTAB both used very similar reasoning in helping to reach their conclusions that Shetty teaches remotely. A decision from the Federal Circuit on this issue will be helpful in understanding whether the claim limitations, in both Patent '601 or Patent '513, are disclosed by Shetty.

---

[3] The court includes this footnote discussing claim 5 of the '513 Patent to illustrate this point. Claim 5 of the '513 Patent is comprised of five steps. (ECF No. 233-1 at 14.) The PTO Examiner found that Shetty discloses three of the five steps—steps "b," "c," and "e." (*See* ECF No. 233-1 at 14.) But the PTO Examiner also found that "Shetty . . . does not specifically disclose step[s]" "a" and "d." (ECF No. 233-1 at 14.) In order to "fill in the gaps," the PTO Examiner relied on Joao—finding that Joao disclosed steps "a" and "d." (*See* ECF NO. 233-1 at 15.)

c. <u>Stay as to the Nine Claims Will Simplify This Case</u>

A stay of the nine rejected claims pending the upcoming decision of Federal Circuit will simply the issues in this case. Vivint seeks damages from Alarm.com for patent infringement of seventeen claims from the four Sandleman patents. The USPTO has now issued a Final Decision invalidating nine of those seventeen claims. "[P]ending reversal on appeal of the PTO's final rejection of the asserted claims, [Vivint] does not possess," with respect to the nine invalidated claims, "any valid patent rights to assert against [Alarm.com]." *Traffic Info., LLC v. Huawei Techs. Co.*, No. 2:10CV145, 2012 WL 12892435, at *3 (E.D. Tex. May 30, 2012). The court agrees with Alarm.com that a stay as to the nine invalidated claims would simplify this case by removing the need for discovery for those claims.

Additionally, currently pending before this court are the parties' cross-motions for claim construction. Of the ten terms to be construed, two involve claims that the USPTO has rejected. The first term is "message generating means for generating an incoming message corresponding to the detected state of the remote equipment" found in claims 8 and 12 of Patent '513. (*See* ECF No. 195 at 11.) The second term is "normalizing the incoming message to form a corresponding normalized message having a predetermined uniform format" found in claim 42 of Patent '601. (*See* ECF No. 195 at 25.) Additionally, Alarm.com argues, in its Motion for Partial Summary Judgment of Invalidity, that claims 8 and 12 of the '513 Patent are indefinite and therefore invalid. (*See* ECF No. 174 at 10.) The court agrees with Alarm.com that a stay as to the nine claims will simplify the motion practice in this case by removing the need to construe the two terms relating to Patent '513 and '601. And a stay as to the nine claims will simplify this case by avoiding the need to decide whether claims 8 and 12 of the '513 Patent are indefinite. The first factor weighs in favor of granting a stay in this case.

2. <u>Stage of Litigation</u>

The court agrees with Alarm.com, based on the unique facts presented in this case, that this case is not in an advanced procedural stage. No trial has been set. Expert discovery has not begun. Other than motions bearing on claim construction issues, the parties have not filed dispositive motions. Again, "pending reversal on appeal of the PTO's final rejection of the asserted claims, [Vivint] does not possess," with respect to the nine invalidated claims, "any valid patent rights to assert against" Alarm.com. *Traffic Info*, 2012 WL 12892435, at *3. Granting a stay as to the nine invalidated claims will avoid wasteful and unnecessary discovery as to those claims that (may) remain invalidated after the completion of the appeals process. The second factor favors granting a stay in this case.

3. <u>Undue Prejudice</u>

Vivint argues that "a stay would severely prejudice Vivint," in part because "[e]ight asserted claims not involved in the *ex parte* reexaminations would be subject to a stay of indefinite length." (ECF No. 241 at 13.) The court agrees. It is for this reason the court will only grant a stay as to the nine claims recently rejected in the *ex parte* reexaminations.

Vivint also argues that it would be prejudiced by a stay because it is a direct competitor with Alarm.com. (ECF. No. 241 at 13.) At oral argument, Vivint explained to the court that "delaying damages will harm Vivint's business and ability to compete." The court believes that issuing a stay only as to the nine recently invalidated claims sufficiently accounts for this prejudice. Vivint is free to proceed with its case seeking resolution for those eight claims that have not been deemed invalid.

Vivint further argues that "[b]y statute, cancellation" of a patent's claim "does not occur until appeals are exhausted . . . ." (ECF No. 241 at 13 n. 7 (citing 35 U.S.C. § 307(a)).) Vivint

argues that if this court declines to grant a stay as to the nine recently invalidated claims, it could obtain a judgment against Alarm.com regardless of the result of the appeals process. (*See* ECF No. 241 at 12.) The court agrees with Alarm.com that it would be unfair to allow Vivint to proceed in this case and obtain a judgment for patent infringement for claims that are ultimately deemed to be invalid. The court agrees with the reasoning of Alarm.com's cited authority that a stay is appropriate as to claims that a PTO Examiner deems invalid through final rejection. *See Traffic Info., LLC v. Huawei Techs. Co.*, No. 2:10CV145, 2012 WL 12892435, at *5 (E.D. Tex. May 30, 2012) ("As noted several times above, all of the claims of the '862 Patent were finally rejected by the PTO . . . Traffic's only hope is a successful appeal to the BPAI and the Federal Circuit. Defendants will suffer needless prejudice if they are forced to litigate these cases now, including time-consuming and costly discovery. Given the unique procedural posture of these cases, Defendants should not be required to undertake years of expensive patent litigation when the outcome of these actions may already have been decided by the PTO."); *Network Appliance, Inc. v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010 WL 545855, at *3 (N.D. Cal. Feb. 11, 2010) ("All of the asserted claims of the '292 Patent have been finally rejected by the PTO, and if that determination is upheld on appeal, the parties and the Court can avoid further claim construction, discovery, invalidity and infringement contentions, summary judgment motions, and trial relating to the '292 Patent.").)

Because the court will not issue a stay for those eight claims that have not been deemed invalid, the third factor weights in favor of staying the case as to the nine recently rejected claims.

<u>The Stay is Temporary</u>

The court orders a limited stay pending the decision of the Federal Circuit—but only as to the nine claims rejected by the USPTO. The court directs Vivint to provide the court with any decision issued by the Federal Circuit on the appeal of the PTAB decision within 14 days of the Federal Circuit issuing its ruling. Should the Federal Circuit not rule on or before May 15, 2019, Plaintiff shall provide the court with a written status report and a recommendation as to how the case should proceed. Alarm.com shall file a response within 14 days of Vivint's filing of the status report.

## Conclusion

The court ORDERS as follows:

I.    The court GRANTS, in part, Alarm.com's Motion to Stay

    a.    The stay applies only to the nine claims recently rejected by the U.S. Patent and Trademark Office *ex parte* proceedings.

    b.    The stay is to and including May 15, 2019. The case shall proceed on all remaining claims without reference to the stay.

        i.    If the Federal Circuit issues a decision on the appeal relevant to the claims pending before it, the parties are instructed to file a status report as indicated above.

II.    Notice of Hearing on Motion Regarding Claim Construction and Two Motions for Partial Summary Judgment

    a.    A hearing on the parties' cross motions for claim construction, (ECF Nos. 168, 170) Alarm.com's Motion for Partial Summary Judgment of Invalidity, (ECF No. 174) and Alarm.com's Motion for Partial Summary Judgment of Non-Infringement (ECF No. 176) is HEREBY SET for April 3, 2019 at 10:00 a.m.

        i.    Claim Construction

            1.    Because of the stay, the court will not hear argument on the two terms relating to those recently invalidated claims.

2.  Because of the stay, the court will hear argument regarding whether claims 8 and 12 of the '513 Patent are indefinite.

DATED this 7th day of December, 2018.

BY THE COURT:

Clark Waddoups
United States District Judge