IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| VIVINT, INC.,<br><br>                        Plaintiff,<br><br>v.<br><br>ALARM.COM INC.,<br><br>                        Defendant. | MEMORANDUM DECISION AND ORDER SUSTAINING DEFENDANT'S RULE 72(a) OBJECTION TO MAGISTRATE JUDGE'S ORDER AS IT RELATES TO VIVINT'S MOTION TO COMPEL ALARM.COM TO PRODUCE SOURCE CODE<br><br>Case No. 2:15-cv-392<br><br>District Judge Clark Waddoups |

Before the court is Alarm.com's objection to two discovery rulings issued by Magistrate Judge Romero—(1) a ruling granting Vivint's Motion to Compel Alarm.com to produce source code and (2) an order denying Alarm.com's Motion for Protective Order. This court only addresses the first ruling in this order. As explained below, because the Magistrate Judge's Order granting Vivint's Motion to Compel was contrary to law, the court sustains Alarm.com's objection.

Background

David Hutz has "been Alarm.com's Chief Systems Architect since February 2006." (ECF No. 290-4 at 1, Hutz Decl. ¶ 3.) "As part of this role," he is "responsible for the software architecture of Alarm.com's backend services as well as managing the software engineering team.[1]" (ECF No. 290-4 at 1, Hutz Decl. ¶ 3.)

According to Mr. Hutz, "[i]n 2014, Alarm.com began developing a feature called the 'Aberration Engine' or the 'Insights Engine'." (ECF No. 290-4 at 1, Hutz Decl. ¶ 4.) "The

---

[1] Alarm.com defines the term "back-end" as "the set of servers that host websites, mobile apps, and any service that may be required for Alarm.com" (ECF No. 327 at 10 n. 7.) The court has reviewed the assertion that this language is to be sealed. The court finds that it does not disclose confidential information that allows it to be sealed.

1

Insights Engine is a machine learning capability that identifies patterns and responds to unusual activity." (ECF No. 290-4 at 1, Hutz Decl. ¶ 4.)

According to Mr. Hutz, "[b]y March 2016, the Insights Engine was in an advanced stage of development and its functionality was being tested by [him] and others at Alarm.com" (ECF No. 290-4 at 1, Hutz Decl. ¶ 4.)

On April 16, 2016, one of Vivint's attorneys sent one of Alarm.com's attorneys an email in which Vivint requested "production of source code as well as a non-exclusive list of specific modules, functions, and applications." (ECF No. 292-1 at 3.) This email contained a list with sixteen distinct requests. (*See* ECF No. 292-1 at 3–4.) Six of the sixteen requests referenced Alarm.com's "backend system." (*See* ECF No. 292-1 at 3–4.) In the eleventh request, Vivint sought:

> Code related to the user's ability to create, customize or modify the response by the Alarm.com **Backend system** in response to events that occur or are detected at a monitored premise, including without limitation, settings for sending or causing mobile notification, emails, or phone calls to devices or individuals in response to tampering, low battery, motion detection, video motion detection, any other conditions or events detectable by Alarm.com.

(ECF No. 292-1 at 3 (bold added).)

According to one of Alarm.com's attorneys, "[o]n approximately April 25, 2016, Alarm.com made the source code for its backend services available for inspection by Vivint counsel. The source code made available included the source code for the Aberration Engine (now referred to as the Insights Engine)." (ECF No. 288-1 at 1, Khadpe Decl. ¶ 6.) Alarm.com produced the Aberration Engine—but it is not clear to the court in response to which of Vivint's sixteen requests.

On May 4, 2016, Davit Hutz was deposed. (*See* Hutz Depo. 4: 1–14; ECF No. 290-3 at 3.) Mr. Hutz testified that he had tested a feature called the "aberration engine" in his house,

2

using his home system. (Hutz Depo. 200: 4–9; ECF No. 290-3 at 4.) The following line of questioning then occurred:

> Q. What does it do?
>
> A. Tries to sign the user up for notifications based on historical data rather than their own—rather than them using the UI[2] in choosing specific things.
>
> Q. So it basically makes the recommendations on notifications for them?
>
> A. It's one step farther than recommendations. Like, it actually creates the notifications.

(Hutz Depo. 200: 12–21; ECF No. 290-3 at 4.) When asked "[w]hy do you call it the 'aberration engine'?" Mr. Hutz responded: "It's trying to detect unusual activity." (Hutz Depo. 201: 22–25; ECF No. 290-3 at 4.) Mr. Hutz was also asked "when was that feature associated with the aberration engine first offered by Alarm.com?" (Hutz Depo. 202: 7–9; ECF No. 290-3 at 5.) Mr. Hutz responded "I'm not sure it's yet available to people." (Hutz Depo. 202: 10–11; ECF No. 290-3 at 5.)

According to Vivint, "Vivint's Final Infringement Contentions . . . were timely served on May 12, 2016 . . . ." (ECF No. 59 at 5.) According to Alarm.com, "Vivint did not mention the Insights Engine (or the 'aberration engine', as it was known internally during development) in its Final Infringement Contentions." (ECF No. 315 at 5.) Vivint does not dispute that it did not mention either the Insights Engine or the Aberration Engine by name in its Final Infringement Contentions.

According to Mr. Hutz, "[o]n September 22, 2016, Alarm.com made the Insights Engine generally available to its dealer partners." (ECF No. 290-4 at 2, Hutz Decl. ¶ 6.) Mr. Hutz

---

[2] The court understands "UI," in this context, to mean "user-interface."

3

continues that "[s]ince its release in September 2016, the overall structure of the Insights Engine and its notification functionality has remained the same, though some additional types of events have been made available for the Insights Engine to analyze." (ECF No. 290-4 at 2, Hutz Decl. ¶ 6.)

"On January 3, 2017, Alarm.com publicly announced the release of the Insights Engine." (ECF No. 315 at 5.) That announcement provided, in relevant part:

> At CES® 2017 today, Alarm.com . . . launched the Alarm.com Insights Engine, a multisensor learning capability that recognizes and proactively responds to unexpected activity around a property.
>
> The Alarm.com Insights Engine is a proprietary machine learning capability that safeguards homes and businesses by identifying patterns and insights in the growing set of data generated by devices and sensors in a connected property. By learning the unique activity patterns of any home or business, the Insights Engine can respond to unusual activity on behalf of the homeowner by taking action through Alarm.com's broad ecosystem of connected devices.

(ECF No. 288-2 at 2.)

According to Alarm.com, "on July 25, 2017, Vivint served its Amended Final Infringement Contentions . . . but still failed to mention the Insights Engine." (ECF No. 315 at 5 (citations omitted).) Alarm.com states that "[i]t was not until May 13, 2019 . . . that Vivint sought the source code at issue" here. (ECF No. 315 at 5–6.)

On June 23, 2019, Vivint moved "to compel the production of Alarm.com['s] 'Insights Engine' source code under FRCP 26(e) based on Document Request Numbers 2, 8, 34, and 36 and Vivint's source code requests." (ECF No. 292 at 2.) Vivint addressed Alarm.com's position that Alarm.com did not have to produce the source because Vivint had not complied with the District of Utah's Local Patent Rules:

> Despite its obligations under Rule 26(e), Alarm.com contends it can withhold all discovery on the 'Insights Engine' because this term does not explicitly appear in Vivint's infringement contentions. But Vivint's infringement contentions

4

> sufficiently identify this functionality in substance because they cover triggering notifications to user devices 'depending on the event or condition, including an exception condition,' based on different rules, including time-based triggers.

(ECF No. 292 at 2.) Vivint also argued, in the alternative, that "even if the Insights Engine were not covered by Vivint's infringement contentions . . . Alarm.com must still produce discovery on it because Vivint's contentions 'give notice of a specific theory of infringement' and the Insights Engine 'operates in a manner reasonably similar to that theory.'" (ECF No. 292 at 2 (quoting *EPOS Techs. v. Pegasus Techs*., 842 F. Supp.2d 31, 33 (D.D.C. 2012)).

On June 28, 2019, Alarm.com filed its Opposition to Vivint's Motion to Compel. (ECF No. 288.) Alarm.com responded that it had produced the "pre-release source code for the Insights Engine in April 2016" and noted that Vivint had questioned Mr. Hutz "about the feature" (ECF No. 288 at 1–2.) Alarm.com argued that because Vivint did not "refer to the Insights Engine in its final infringement contentions," "nor in its revised final infringement contentions," it was required to "move to amend those contentions within 14 days of discovery of the basis." (ECF No. 288 at 2 (citing LPR 3.4).) Vivint did not move to amend within the required time. Alarm.com also argued that "Vivint cannot reopen fact discovery . . . to obtain additional discovery on a feature not covered by its contentions, nor belatedly accuse a feature it knew about for three years." (ECF No. 288 at 2.)  Alarm.com argued that "LPR 2.3 explicitly requires that 'each Accused Instrumentality must be identified by name, if known,'" but argued that "neither 'Insights Engine' nor 'Aberration Engine' appears in Vivint's revised final infringement contentions." (ECF No. 288 at 2 (quoting *Oracle Am., Inc. v. Google Inc*., 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011).) Alarm.com also argued that "[a] motion by Vivint to amend its contentions would fail to satisfy LPR 3.4's 14-day limitation and the 'good cause' standard, which requires a showing of diligence." (ECF No. 288 at 3 (citing *O2 Micro*

5

*Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1367-68 (Fed. Cir. 2006).)

On December 16, 2019, Magistrate Judge Romero heard argument on Vivint's Motion to Compel. (ECF No. 306.) At the hearing, Magistrate Judge Romero had a question "on controlling precedent." (ECF No. 313 at 6; Tr. 6: 8–9.) Magistrate Judge Romero explained that she had "read the cases that" the parties had cited, but noted that she had not seen "anything that is out of the Tenth Circuit and therefore controlling, it would just all sort of be persuasive." (ECF No. 313 at 6; Tr. 6: 9–13.) Magistrate Judge Romero then asked Vivint's counsel "Is that your position as well with respect to the case law that has been cited?" (ECF No. 313 at 6; Tr. 6: 13–14.) Vivint's counsel answered: "I think that's correct, Your Honor." (ECF No. 313 at 6; Tr. 6: 15–16.) Later, Alarm.com's counsel addressed Magistrate Judge Romero's question about controlling precedent—also believing the issue to be controlled by Tenth Circuit precedent. (ECF No. 313 at 45; Tr. 45: 1–4 ( "and returning just briefly to Your Honor's question earlier about controlling precedent, there's—Your Honor is correct there is no Tenth Circuit law on this . . . .").)

On January 22, 2020, Magistrate Judge Romero entered an order granting Vivint's Motion to Compel. (ECF No. 312 at 1.) On February 5, 2020, Magistrate Judge Romero stayed that order. (*See* ECF No. 319 at 1 ("Defendant Alarm.com's obligation to produce the discovery as ordered in the court's Order Re: Motion to Compel and Motion for Protective Order (ECF 312) shall be stayed until Judge Waddoups issues an order on Defendant's Objections to Order . . . .").)

Federal Rule of Civil Procedure 26(e)

Federal Rule of Civil Procedure 26(e) provides, in relevant part, that "[a] party who has . . . responded to . . . [a] request for production . . . must supplement or correct its disclosure or

response:" "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). "[F]ormal discovery responses need to be supplemented only if they were incomplete or incorrect 'in some material respect' . . . ." 8A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2049.1.

<u>District of Utah Local Patent Rules</u>

Utah Local Patent Rule 2.3 (LPR) provides that "[a] party claiming patent infringement must serve on all parties 'Initial Infringement Contentions' containing," among other things, "for each asserted claim, identification of each Accused Instrumentality of which the party claiming infringement is aware," "no later than thirty-five (35) days after the defendant's Initial Disclosure . . . ." LPR 2.3(b). "Each Accused Instrumentality must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process[.]" LPR 2.3(b). Further, a party claiming infringement must serve "a chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality . . . ." LPR 2.3(c).

Utah Local Patent Rule 3.1 requires "[a] party claiming patent infringement [to] serve on all parties 'Final Infringement Contentions' containing the information required by LPR 2.3 (a)-(h) no later than twenty-one (21) weeks after the due date for service of Initial Infringement Contentions." LPR 3.1. In other words, just as in the Initial Infringement Contentions, in the Final Infringement Contentions, "[e]ach Accused Instrumentality must be identified by name, if known . . . ." (*Compare* LPR 3.1 *with* LPR 2.3(b)).

Utah Local Patent Rule 3.4 provides, in relevant part, that "[a] party may amend its Final

Infringement Contentions . . . only by order of the court upon a showing of good cause and absence of unfair prejudice to opposing parties, made no later than fourteen (14) days of the discovery of the basis for the amendment." LPR 3.4.

The Preamble to the Utah Local Patent Rules explains that the rules "provide a standard structure for patent cases that will permit greater predictability and planning for the court and the litigants." LPR, Preamble. The Preamble further explains that "[t]he Rules require . . . meaningful disclosure of each party's contentions and support for allegations in the pleadings." LPR, Preamble. The Preamble continues:

> Complaints and counterclaims in most patent cases are worded in a bare-bones fashion, necessitating discovery to flesh out the basis for each party's contentions. The Rules require the parties to provide the particulars behind allegations of infringement . . . at an early date. Because Federal Rule of Civil Procedure 11 requires a party to have factual and legal support for allegations in its pleadings, early disclosure of the basis for each party's allegations will impose no unfair hardship and will benefit all parties by enabling a focus on the contested issues at an early stage of the case. The Rules' supplementation of the requirements of . . . [the] Federal Rules [of Civil Procedure] is also appropriate due to the various ways in which patent litigation differs from most other civil litigation, including its factual complexity; the routine assertion of counterclaims; the need for the court to construe, and thus for the parties to identify, disputed language in patent claims; and the variety of ways in which a patent may be infringed or invalid.

LPR, Preamble.

Standard

Under Federal Rule of Civil Procedure 72(a), a district court is required to "consider timely objections [to a nondispositive order from a magistrate judge] and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). "Under Rule 72, a district court is 'required to 'defer to the magistrate judges ruling unless it is clearly erroneous or contrary to law.'" *Raytheon Co. v. Cray, Inc.*, No.

2:16-MC-898-DAK, 2017 WL 823558, at *2 (D. Utah Mar. 2, 2017) (quoting *Allen v. Sybase, Inc.*, 468 F.3d 642, 658–59 (10th Cir. 2006)). "The 'clearly erroneous' standard under Rule 72(a) applies to factual findings." Id. (citation omitted). "In order for a district court to overturn a magistrate judge's decision as clearly erroneous, the court must be left with a 'definite and firm conviction that a mistake has been committed.'" Id. (citation omitted). "Under the 'contrary to law' standard, the district court conducts a plenary review of the magistrate judge's purely legal determinations, setting aside the magistrate judge's order only if it applied an incorrect legal standard." Id. (citation omitted).

## Analysis

As an initial matter, the court must determine whether Federal Circuit or Tenth Circuit law governs the validity and interpretation of the District of Utah's local patent rules. As discussed above, both parties suggested to Judge Romero that this issue is governed by Tenth Circuit law. (*See* ECF No. 313 at 6; Tr. 6: 15–16; ECF no. 313 at 45; Tr. 45: 1–4.) This was incorrect.

In *O2 Micro*, the Federal Circuit was presented questions "concerning the interpretation and application of the Northern District of California's local rules for patent cases." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1362 (Fed. Cir. 2006). More specifically, it was interpreting that district's local patent rules on infringement contentions and amendment of infringement contentions. *See id*. at 1365. The issue before the Federal Circuit was whether its law, or the Ninth Circuit's law, governed "the validity and interpretation" of those rules. *Id*. at 1363–64.

In deciding this issue, the Federal Circuit explained that it applies its own law "'to both substantive and procedural issues intimately involved in the substance of enforcement of the

9

patent right.'" *Id*. at 1364. The Federal Circuit found that the Northern District of California's local patent rules on amendment of infringement contentions were "likely to directly affect the substantive patent law theories that may be presented at trial, being designed specifically to 'require parties to crystallize their theories of the case early in litigation' . . . ." *Id*. (citation omitted). Because "the Northern District of California's local patent rules on amendment of infringement contentions [were] unique to patent cases and ha[d] a close relationship to enforcement of substantive patent law," the Federal Circuit "proceed[ed] to review their validity and interpretation under Federal Circuit law." *Id*. at 1364–65.

Like the Northern District of California's local patent rules on infringement contentions, the District of Utah's local patent rules were designed "to require the parties to provide the particulars behind allegations of infringement . . . at an early date." LPR, Preamble. The court concludes that the District of Utah's Local Patent Rules on infringement contentions "are unique to patent cases and have a close relationship to enforcement of substantive patent law." *O2 Micro*, 467 F.3d at 1365. Thus, if controlling authority exists on the interpretation of the District of Utah's local patent rules relating to infringement contentions, it is to be found in the Federal Circuit—not the Tenth Circuit.

"'Federal courts are absolutely bound by vertical precedents—those delivered by higher courts within the same jurisdiction.'" *Fitisemanu v. United States*, 426 F. Supp. 3d 1155, 1182 (D. Utah 2019) (quoting Bryan A. Garner et al., *The Law of Judicial Precedent* 27 (2016)). "'The rule is that courts must adhere not just to the result but also to any reasoning necessary to that result.'" *Id.* (citation omitted). As explained below, the Federal Circuit's *O2 Micro* decision provides several guiding principles that dictate the court's decision in this case.

First, the Federal Circuit explained that the purpose of discovery rules is not "solely to

enable a claimant to develop information to support its claim." *O2 Micro*, 467 F.3d at 1365. The Federal Circuit explained that "discovery allowed by the rules serves two purposes." *Id*. "First, discovery allows the plaintiff to develop facts to support the theory of the complaint and allows the defendant to develop facts to support its defenses." *Id*. "Second, discovery is designed to allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case." *Id*.

Second, the Federal Circuit explained that local patent rules had been designed to better achieve the second objective—"allowing the parties to discover their opponents theories of liability." *Id*. The Federal Circuit explained that in patent cases, the second objective had "been difficult to achieve through traditional discovery mechanisms such as contention interrogatories." *See id*. The Federal Circuit explained that "[t]he local patent rules in the Northern District of California [were] designed to address this problem by requiring both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *Id*. at 1365–66. The Federal Circuit explained that this rule "seeks to balance the right to develop new information in discovery with the need for certainty as to legal theories." *Id*. at 1366.

Third, the Federal Circuit explained that a local patent rule that seeks to promote early certainty as to legal theories through infringement contentions does not violate the Federal Rules of Civil Procedure—so long as parties are given an opportunity to diligently amend their contentions. The Federal Circuit explained that "[t]o be valid, local rules must be consistent with both acts of Congress and the Federal Rules of Civil Procedure." *O2 Micro*, 467 F.3d at 1365.

11

"[A] local rule that is inconsistent" with even just the "purposes of a federal rule is . . . invalid." *Id*. The Federal Circuit made clear that a local patent rule that would refuse "to allow any amendment to [infringement or invalidity] contentions based on new information developed in discovery would be contrary to the spirit of the Federal Rules." *Id*. at 1366.[3] But the Federal Circuit saw "nothing in the Federal Rules that is inconsistent with local rules requiring the early disclosure of infringement . . . contentions and requiring amendments to contentions to be filed with diligence." *O2 Micro*, 467 F.3d at 1366. Crucially here, the Federal Circuit provided reasoning that binds this court: "[i]f the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *Id*.

Before turning to the parties' arguments, the court explains why much of the Federal Circuit's reasoning in *O2 Micro* applies to the District of Utah's Local Patent Rules.

First, Utah's LPR Preamble makes clear that the purpose of discovery in patent cases is not solely to enable a claimant to develop information to supports its claim—but also to allow the defendant to develop facts to support its defense and to allow the defendant to pin down the plaintiff's theory of liability. *See* LPR Preamble ("Complaints . . . in most patent cases are worded in a bare-bones fashion, necessitating discovery to flesh out the basis for each party's contentions. The Rules require the parties to provide the particulars behind allegations of infringement . . . at an early date.").

Second, like the rules at issue in *O2 Micro*, Utah's Local Patent Rules recognize the need

---

[3] The Federal Circuit again stated this proposition later in the same paragraph. *See O2 Micro*, 467 F.3d at 1366 ("If a local patent rule required the final identification of infringement and invalidity contentions to occur at the outset of the case, shortly after the pleadings were filed and well before the end of discovery, it might well conflict with the spirit, if not the letter, of the notice pleading and broad discovery regime created by the Federal Rules.").)

for an appropriate balance between the right to develop new information in discovery with the need for certainty as to the legal theories at issue in the case. *See* LPR Preamble ("The initial disclosures required by the Rules are not intended to confine a party to the contentions it makes at the outset of the case. It is not unusual for a party in a patent case to learn additional grounds for claims of infringement . . . as the case progresses. After a reasonable period for fact discovery, however, each party must provide a final statement of its contentions on relevant issues, which the party may thereafter amend only 'upon a showing of good cause and absence of unfair prejudice to opposing parties, made no later than fourteen (14) days of the discovery of the basis for the amendment.'").) Like the rules at issue in *O2 Micro*, Utah's Local Patent Rules allow a party to diligently amend its final contentions upon discovery of new information. Because Utah's Local Patent Rules related to infringement contentions allow a party to amend its final contentions upon discovery of new information, they do not violate the Federal Rules of Civil Procedure.

Because the District of Utah's Local Patent Rules Preamble makes clear that Utah's rules were designed to address many of the same concerns as those discussed in *O2 Micro*, the court finds much of the Federal Circuit's reasoning applicable to Utah's rules. With *O2 Micro* in mind, the court turns to the parties' arguments in this case.

Alarm.com argues that the Magistrate Judge's "Order granting Vivint's motion is contrary to law because it contravenes this District's Local Patent Rules . . . ." (ECF No. 315 at 7.) More specifically, Alarm.com argues that the Order misconstrues Utah Local Patent Rule 2.3. Again, Local Patent Rule 2.3 provides: "Each Accused Instrumentality must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process[.]" LPR 2.3(b).

The Magistrate Judge held that "[w]ithout binding authority interpreting Utah LPR 2.3 as requiring precise, specific, or explicit identification of each accused instrumentality, the court is not persuaded that Plaintiff was required to distinguish between user set alerts and machine-based triggers in their final infringement contentions in order for the updated Insights Engine code to be discoverable." (ECF No. 312 at 4.) The Order similarly provided that "[n]either party has identified any binding authority interpreting the relevant provision of this local rule and whether it requires the Accused Instrumentality be described with particularity." (ECF No. 312 at 3.)

Alarm.com argues that the Order is contrary to law because Utah Local Patent Rule 2.3's "plain language" required Vivint to identify the accused instrumentality by name, and argues that "Vivint indisputably knew the (in-development) name of the Insights Engine ('aberration engine'), but failed to identify the instrumentality by name or by any other means." (ECF No. 315 at 8–9. The court agrees with Alarm.com that the Order was contrary to law.

The plain language of LPR 2.3 required Vivint to identify the accused instrumentality by name. Vivint knew the name of the accused instrumentality—the aberration engine—but did not identify it in their Final Infringement Contentions.

Vivint argues that the Order was not contrary to law because "district courts across the country," "including many with local patent rules," allow discovery on products "'reasonably similar to those accused in the infringement contentions.'" (ECF No. 321 at 7.) But those district court cases do not speak to what the law requires in this district. And as explained above, the plain language of this district's local patent rules required Vivint to identify the Accused Instrumentality, "by name, if known." Nothing in the text of this district's local patent rules supports the use of the "reasonably similar" approach Vivint urges this court to adopt.

14

Vivint argues, in the alternative, that "the 'Insights Engine' code is part of an already-accused product: the Alarm.com backend that provides security services." (ECF No. 321 at 8.) In response to this argument, Alarm.com argues that "Vivint's argument that it need only name 'the Alarm.com backend' to preserve its ability to later accuse *any* Alarm.com service would eviscerate the purpose of the infringement contentions (and therefore the LPRs)." (ECF No. 327 at 10.) Alarm.com defines the term "back-end" as "the set of servers that host websites, mobile apps, and any service that may be required for Alarm.com" (ECF No. 327 at 10 n. 7.)

The court has no reason to question Alarm.com's definition of the term "back-end." Source code contained in Alarm.com's back-end is thus extensive. Vivint's description of the accused product as "the Alarm.com backend that provides security services," is overbroad. The court agrees with Alarm.com that Vivint's argument, if accepted, would defeat the purpose of the local patent rules—which require much greater specificity.

Vivint also suggests that Alarm.com is obligated to produce the Insights Engine source code under Federal Rule of Civil Procedure 26(e).[4] (*See* ECF No. 321 at 8–9 ("Alarm.com should not be rewarded for withholding its source code and failing to update its interrogatory response.").) In response, Alarm.com argues:

> Finally, Vivint's assertion—which the Order adopted (Order at 4)—that Alarm.com produced only a portion of its source code is flatly incorrect. In fact, Alarm.com produced *all* of the relevant source code, including for the Insights Engine, after Vivint served its *initial* infringement contentions. Vivint had the opportunity to review that code before serving its AFICs but chose for its own reasons not to accuse the Insights Engine. Thus, Alarm.com is not seeking to be "rewarded for withholding its source code" as Vivint suggests. (Response at 4.) Alarm.com produced its source code when it was requested and then justifiably relied on Vivint's decision not to accuse the Insights Engine in its AFICs as well as its failure to seek leave to amend.

---

[4] In its original motion before the Magistrate Judge, Vivint argued that Alarm.com was obligated under Rule 26(e) to produce the Insights Engine source code. (*See* ECF No. 292 at 2 ("Despite its obligations under Rule 26(e), Alarm.com contends it can withhold all discovery on the 'Insights Engine' because this term does not explicitly appear in Vivint's infringement contentions.").)

15

(ECF No. 327 at 10–11 (emphases in original).) As noted above, discovery responses only need to be supplemented if they were incomplete "in some material respect." In the context of a patent case, infringement contentions are designed to shape materiality.

Mr. Hutz submitted a declaration under penalty of perjury that "[b]y March 2016, the Insights Engine was in an advanced stage of development and its functionality was being tested by [him] and others at Alarm.com" (ECF No. 290-4 at 1, Hutz Decl. ¶ 4.) One of Alarm.com's attorneys submitted a declaration under penalty of perjury that on April 25, 2016, Alarm.com made the source code for the Aberration Engine available to Vivint. (ECF No. 288-1 at 1, Khadpe Decl. ¶ 6.) Vivint deposed Mr. Hutz on May 4, 2016, and asked him questions about the Aberration Engine. According to Vivint, "Vivint's Final Infringement Contentions . . . were timely served on May 12, 2016 . . . ." (ECF No. 59 at 5.) Vivint does not dispute that it did not mention either the Insights Engine or the Aberration engine by name in its Final Infringement Contentions. Once Vivint served the Final Infringement Contentions on May 12, 2016—lacking any identification of the Aberration Engine by name—the Aberration Engine was no longer material to the case and Alarm.com had no obligation to supplement its responses related to the Aberration Engine.

To summarize, based on authoritative guidance from the Federal Circuit, the court holds that Utah's Local Patent Rules related to infringement contentions do not violate the Federal Rules of Civil Procedure. The plain language of LPR 2.3 required Vivint to identify the accused instrumentality by name, but it did not do so. Once Vivint served its Final Infringement Contentions in May 12, 2016—lacking identification of the Aberration Engine by name—the Aberration Engine was no longer material to the case, and Alarm.com had no obligation to supplement its responses related to the Aberration Engine. If Vivint felt that its discovery of

16

Alarm.com's commercial release of the Insights Engine warranted adding the Insights Engine to its case, it had a mechanism to do that through amendment of its amended final infringement contentions under LPR 3.4 The Magistrate Judge's decision to compel Alarm.com to produce the updated source code after that source code was no longer material to the case—without requiring Vivint to amend its contentions—was contrary to law. *C.f. O2 Micro*, 467 F.3d 1366 ("If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation.").

<u>Conclusion</u>

For the foregoing reasons, the court SUSTAINS Alarm.com's Rule 72(a) objection as it relates to Vivint's Motion to Compel Alarm.com to Produce Source Code. The Magistrate Judge's Order granting Vivint's Motion to Compel is VACATED.

DATED July 9, 2020.

BY THE COURT:

_____
Clark Waddoups
United States District Judge