IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | | |
|---|---|---|
| VIVINT, INC.,<br><br>                                  Plaintiff,<br><br>                    v.<br><br>ALARM.COM INC.,<br><br>                                  Defendant. | | MEMORANDUM DECISION AND ORDER OVERRULING DEFENDANT'S RULE 72(a) OBJECTION TO MAGISTRATE JUDGE'S ORDER AS IT RELATES TO ALARM.COM'S MOTION FOR PROTECTIVE ORDER<br><br>Case No. 2:15-cv-392<br><br>District Judge Clark Waddoups |

Before the court is Alarm.com's objection to two discovery rulings issued by Magistrate Judge Romero—(1) a ruling granting Vivint's Motion to Compel Alarm.com to produce source code and (2) an order denying Alarm.com's Motion for Protective Order. This court only addresses the second ruling in this order. As explained below, because the Magistrate Judge's Order denying Alarm.com's Motion for Protective Order was neither clearly erroneous nor contrary to law, the court the court OVERRULES Alarm.com's Rule 72(a) objection as it relates to Alarm.com's Motion for Protective Order.

## **Background**

SecureNet Litigation

On September 11, 2015, Icontrol Networks, Inc. filed a complaint for patent infringement against SecureNet Interactive Technologies (SecureNet) in the district of Delaware. (*See* ECF No. 1; 1:15-cv-807 (D. Del.).) On March 27, 2017, the parties agreed "to substitute Alarm.com" as a plaintiff in that action. (*See* ECF No. 28; 1:15-cv-807 (D. Del.).)

According to Alarm.com, "[t]he Delaware court entered [a] Stipulated Protective Order on July 13, 2017." (ECF No. 295-1 at 3.) Relevant here, the Protective Order provides that "[p]rotected Information shall not be distributed, disseminated or otherwise produced by a

1

Receiving Party, except for transmission to qualified recipients, without the written permission of the producing party, or, in the alternative, by further order of the Court." (ECF No. 295-10 at 17.) The Protective Order also provides: "Other Proceedings: By entering this order and limiting disclosure of information from this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a request or motion to disclose another party's Protected Information shall promptly notify that party of the request or motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed." (ECF No. 295-1 at 22.)

On October 30, 2018, SecureNet filed in the Delaware case two sealed opening briefs relevant to the present dispute. The first was a brief in support of its motion for summary judgment, and the second was a brief in support of its motion to exclude the expert opinions of Brett Reed. (ECF Nos. 174 & 176; 1:15-cv-807 (D. Del.).) In the brief in support of the Motion for Summary Judgment, SecureNet sought "summary judgment of indefiniteness, lack of standing for [Alarm.com], no lost profits, no pre-suit damages and no pre-suit damages for indirect infringement." (ECF No. 179 at 10; 1:15-cv-807 (D. Del.) (redacted version).) In the brief in Support of its Motion to Exclude Brett Reed, SecureNet wrote "[o]n July 17, 2018," Alarm.com's "damages expert Brett Reed submitted an expert report seeking lost profits and reasonable royalty damages . . . ." (ECF No. 178 at 7; 1:15-cv-807 (D. Del.) (redacted version).) SecureNet sought to "exclude the lost profits and secondary considerations opinions of" Brett Reed. (ECF No. 178 at 6; 1:15-cv-807 (D. Del.).)

On December 21, 2018, the district court in Delaware entered an order granting in part and denying in part SecureNet's Motion for Summary Judgment. (*See* ECF No. 214 at 14; 1:15-

2

cv-807 (D. Del.) ("For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment as to pre-assignment lost profits and pre-suit liability for indirect infringement of the patents-in-suit and DENIES Defendant's Motion as to indefiniteness of the term 'objects' and Plaintiff Alarm.com's standing.").) On January 8, 2019, the district court in Delaware entered an order granting in part and denying in part SecureNet's Motion to Exclude Brett Reed. (ECF No. 217 at 2; 1:15-cv-807 (D. Del.)

A jury trial was held between February 4, 2019 and February 8, 2019. (*See* ECF No. 293–297; 1:15-cv-807 (D. Del.)

On February 7, 2019, SecureNet moved for Judgment as a Matter of Law. (*See* ECF No. 266; 1:15-cv-807 (D. Del.) Relevant here, SecureNet argued that "the court should grant judgment as a matter of law as to damages," in part, because it argued that Alarm.com had "not provided sufficient evidence from which the jury could award the reasonable royalty" it sought. (*See* ECF No. 266 at 21; 1:15-cv-807 (D. Del.) SecureNet argued that "Alarm.com seeks a reasonable royalty of $1.50 per user per month." (*See* ECF No. 266 at 21; 1:15-cv-807 (D. Del.) SecureNet argued that Alarm.com had "relied solely on the testimony and exhibits of Mr. Reed to meet its burden of proving the reasonably royalties it" sought. (*See* ECF No. 266 at 21; 1:15-cv-807 (D. Del.) SecureNet argued that Alarm.com had relied on "an agreement between Alarm.com and Vivint, Inc.," among other agreements, to support "his reasonable royalty analysis." (*See* ECF No. 266 at 22; 1:15-cv-807 (D. Del.)

Also relevant here, SecureNet argued that "[t]he Vivint Agreement is not a comparable license because it involves patents unrelated to the Asserted Patents." (*See* ECF No. 266 at 23; 1:15-cv-807 (D. Del.) SecureNet argued further that "Mr. Reed admitted that he has no evidence that the technology included in the Vivint Agreement is technologically comparable to the

Asserted Patents." (*See* ECF No. 266 at 23; 1:15-cv-807 (D. Del.) SecureNet also argued that "[t]he basic fact that companies were operating in the same general field is also insufficient to establish comparability between their patents." (*See* ECF No. 266 at 23; 1:15-cv-807 (D. Del.)

On February 8, 2019, the jury reached its verdict and submitted a jury verdict form. (*See* ECF No. 271 at 9; 1:15-cv-807 (D. Del.) Relevant here, the jury was tasked with deciding whether Alarm.com had proved that SecureNet had infringed any one of three patents—the '931 Patent, the '619 Patent, and the '844 Patent. (*See* ECF No. 271 at 1–5; 1:15-cv-807 (D. Del.) The jury found that Alarm.com had not proved infringement for any of the three patents at issue. (*See* ECF No. 271 at 1–5; 1:15-cv-807 (D. Del.) Because the jury failed to find infringement, it did not have to decide the issue of whether Alarm.com had proven lost profits or reasonable royalties for sales of SecureNet's Accused Products. (*See* ECF No. 271 at 8; 1:15-cv-807 (D. Del.)

Alarm.com "move[d] for a new trial or JMOL of infringement on the asserted claims of the '619 and '931 patent[s]." (ECF No. 299 at 2; 1:15-cv-807 (D. Del.) The Delaware district court denied that motion. (ECF No. 299 at 20; 1:15-cv-807 (D. Del.)

Close of Fact Discovery in This Case

On September 4, 2018, this court granted the parties' stipulated motion to extend fact discovery to December 7, 2018. (ECF No. 213 at 1.) That order also provided that "[t]he times and deadlines set forth herein may not be modified without the approval of the Court and on a showing of good cause . . . ." (ECF No. 213 at 1.)

November 2018 Subpoena

Prior to the discovery deadline, "[o]n November 9, 2018, Vivint served SecureNet with a

subpoena comprising 14 requests for documents . . . seeking SecureNet business records."[1]

(ECF No. 315 at 6; *see also* ECF No. 295-2 at 6–7.)

---

[1] Request No. 1: Documents sufficient to disclose each and every name or other identifier under which you have marketed any Platform-enabled service or feature, from 2014 to the present.

Request No. 2: Documents sufficient to identify each and every Platform-enabled service or feature, from 2014 to the present.

Request No. 3: For every Platform-enabled service or feature not available as of January 1, 2014, documents sufficient to disclose the date on which that service or feature became available.

Request No. 4: Documents sufficient to identify each and every Package, including, to the extent applicable, every name under which that Package has been marketed or sold.

Request No. 5: Documents sufficient to identify, by Package, all the services and features included in every Package—including, if the composition of the Package has not been constant from 2014 to the present, documents sufficient to disclose the date(s) on which any services or features were added to or removed from that Package.

Request No. 6: Documents sufficient to disclose, by Package, your pricing for every Package—including, if the pricing of the Package has not been constant from 2014 to the present, documents sufficient to disclose when each pricing change went into effect.

Request No. 7: Documents sufficient to disclose the number of subscribers or users of every Platform from 2014 to the present, by month, Dealer, Package, and zip code.

Request No. 8: Documents sufficient to disclose the number of new subscribers or users of every Platform from 2014 to the present, by month, Dealer, Package, and zip code.

Request No. 9: Exemplary marketing materials for every Platform, Package, and Platform enabled service and feature, from 2014 to the present.

Request No. 10: Documents sufficient to disclose, by brand and model, every in-home panel that has been supported by any Platform at any time from 2014 to the present—including, if compatibility for any panel has not been constant from 2014, documents sufficient to disclose the date(s) on which the panel became or ceased to be supported by the Platform.

Request No. 11: Documents sufficient to identify any limitations, whether by source or type, on the use of any on-premise interactive-security or other home-automation equipment with any Platform, from 2014 to the present—including, if compatibility for any such equipment has not been constant from 2014, documents sufficient to disclose the date(s) on which equipment became or ceased to be supported by the Platform.

Request No. 12: Documents sufficient to identify, by type and provider, cellular networks utilized in connection with any Platform at any time from 2014 to the present—including, if network utilization has not been constant from 2014, documents sufficient to disclose the date(s) on which each network began or ceased to be used.

Request No. 13: Documents sufficient to identify every mobile-device application ("app") in production in connection with any Platform at any time from 2014, and every version of every such app—including, if app availability or support has not been constant from 2014, documents sufficient to disclose the date(s) on which each app and each version of each app became or ceased to be available or supported.

Request No. 14: Executable code for every app, and every version of every app, in production in connection with any Platform at any time from 2014 to the present.

<u>Vivint's Counsel's December 5, 2018 Letter</u>

On December 5, 2018, one of Vivint's attorneys sent one of Alarm.com's attorneys an email letter "to identify fact discovery that Vivint [was still seeking,] including unresolved discovery issues." (ECF No. 295-9 at 2.) The email addressed four topics: deposition discovery, written discovery, third-party subpoenas, and supplementation. (ECF No. 295-9 at 2–4.) The email explained that "Vivint [was] working with" "SecureNet Technologies, LLC," among other companies, "to complete their productions in response to document subpoenas." (ECF No. 295-9 at 3–4.)

<u>Alarm.com's Counsel's December 7, 2018 Letter</u>

On December 7, 2018, one of Alarm.com's attorneys responded to Vivint's letter. (ECF No. 296-4 at 2.) The letter provided, in relevant part:

> this letter confirms the parties' agreement that 1) their December 5 letters constitute the entirety of the open issues on fact discovery and 2) timeliness is not a basis to object to continued discussion of the issues enumerated in the December 5 letters. Alarm.com, however, expressly reserves the right to object to any of these topics on other grounds.

(ECF No. 296-4 at 2.) The agreement was not formalized by a stipulation or court order modifying the scheduling order or discovery deadline.

<u>SecureNet's Counsel Emails Alarm.com's Counsel</u>

Nine months later, on August 29, 2019, SecureNet's counsel sent an email to Alarm.com's counsel. That email provided, in relevant part:

> I'm reaching out because SecureNet received the attached subpoena and Protective Order in connection with a case pending in the District of Utah, *Vivint, Inc. v. Alarm.com, Inc.* (2:15-cv-00392). After conferring with counsel for Vivint, they have narrowed their requests to only (1) the damages expert reports (i.e., Brett Reed and Doug Kidder) and (2) unredacted summary judgment and *Daubert* briefing regarding lost profits from the Alarm.com v. SecureNet matter.
>
> Pursuant to the Protective Order in the Alarm/SecureNet case, I am notifying you

of SecureNet's intention to comply with the Vivint subpoena as narrowed. We understand that Alarm.com is subject to the Protective Order in the Vivint/Alarm.com case and has already disclosed Alarm.com confidential information pursuant to that Protective Order. As such, we do not anticipate any objections from Alarm.com regarding SecureNet's compliance with this subpoena. Absent any objection from you, we will produce the relevant documents on September 4, 2019.

(ECF No. 295-3 at 2.)

Vivint and Alarm.com Exchange Letters

A few days later, on September 6, 2019, Vivint's counsel sent Alarm.com's counsel a

letter that provided, in relevant part:

As you know Vivint served a subpoena on SecureNet in November 2018. Alarm.com did not object to this subpoena. We have been working with SecureNet to get a production of documents responsive to the subpoena. During our discussions we have agreed with SecureNet that the damages expert reports and related briefing in SecureNet's recent litigation against Alarm.com would provide Vivint the necessary information responsive to the subpoena as well as save SecureNet significant expense in serving documents separately.

(ECF No. 295-4 at 2.) On September 10, 2019, Alarm.com's attorney sent a letter responding to

Vivint's letter—providing, in relevant part:

Your letter states that you are asking SecureNet to produce "damages expert reports and related briefing in SecureNet's recent litigation against Alarm.com" in response to the subpoena. We have reviewed the subpoena, and the materials you are now seeking are not responsive to any of the fourteen requests in the subpoena.  We thus do not understand the basis for seeking these materials from SecureNet under the subpoena.  If you disagree, please let us know the request or requests in the subpoena to which Vivint believes these materials are responsive, and the basis for believing so.

(ECF No. 295-5 at 2.) The parties exchanged at least three more letters before Alarm.com moved

for a protective order. (*See* ECF Nos. 295-7 at 2; ECF No. 295-8 at 2.)

Alarm.com Moves for a Protective Order

On September 20, 2019, Alarm.com moved the court "under Fed. R. Civ. P. 26(c)(1) for

a protective order prohibiting Vivint from seeking . . . expert reports and briefing from" the

Delaware SecureNet litigation. (ECF No. 295 at 2.) Alarm.com argued that "[g]ood cause for issuance of the requested protective order exists for three independent reasons." (ECF No. 295 at 2.) First, Alarm.com argued that "the requested expert reports and briefs are not relevant to any claim or defense in this case." (ECF No. 295 at 3.) Second, Alarm.com argued that "Vivint's request is not covered by its subpoena and is therefore an untimely new request." (ECF No. 295 at 3.) Third, Alarm.com argued that "the documents are not in possession or custody of SecureNet." (ECF No. 295 at 3.)

Vivint Files Opposition to Alarm.com's Motion

On September 27, 2019, Vivint filed its Opposition. (ECF No. 296 at 1.) Vivint argued that "Alarm.com's motion for protective order should be denied because: 1) Alarm.com lacks standing to object to the third-party subpoena; 2) the documents are relevant; 3) the documents are responsive to the subpoena; and 4) the documents are within the possession/custody of SecureNet." (ECF No. 296 at 1.)

Regarding its third argument, Vivint provided:

Third, Alarm.com expressly agreed that Vivint could pursue documents from SecureNet past December 7, 2018. At Alarm.com's suggestion, Vivint provided a list of outstanding fact discovery issues in a December 5, 2018 letter, which included the SecureNet subpoena. (Ex. 3). Alarm.com confirmed that those issues addressed in the December 5 letter would be continued past December 7, 2018 (Ex. 4). Thus, SecureNet's production of the requested expert reports and briefing are within Alarm.com's agreed upon extension.

(ECF No. 296 at 2.) Vivint did not explain how the Delaware SecureNet materials were responsive to the November 2018 subpoena.

Magistrate Judge Hears Argument

On December 16, 2019, Magistrate Judge Romero heard argument on Alarm.com's Motion for Protective Order.  (ECF No. 306.) At the hearing, Judge Romero addressed the fact

that fact discovery had closed on December 7, 2019, but noted that the parties' informal agreement extended fact discovery passed that date.[2] Judge Romero, on at least two occasions, expressed her frustration with the parties having entered into the informal agreements.[3]

Joint Motion to Extend Discovery

On February 4, 2020, the parties filed a Joint Motion to Extend Discovery. (ECF No. 318.) In this Joint Motion, the parties provided that "[p]rior to the close of fact discovery on December 7, 2018 under the current Scheduling Order, the parties reached an informal agreement to complete a limited list of outstanding fact discovery issues." (ECF No. 318 at 1.) On February 5, 2020, Judge Romero granted that motion, extending the date to conduct depositions of certain witnesses until March 27, 2020.

## Relevant Federal Rules of Civil Procedure

The present dispute relates to two topics—third-party subpoenas and the court's scheduling order. At least four Federal Rules of Civil Procedure are relevant here—(I) Rule 16(f), (II) Rule 26(c), (III) Rule 29(b), (IV) and Rule 45(d).

I.    Rule 16(f)

Relevant here, Rule 16(f) provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C).

---

[2] (ECF No. 313 at 4; Tr. 4: 17–25 ("I want to make sure that I understand what operative discovery deadline we're operating under. It seems you all have an informal agreement which I think has been encompassed in a December 5th and a December 7th letter. And I just want to make sure that's correct because when I look at the docket I see an order was entered saying it closed on the 7th but then I saw those two letters in the pleadings and I think those are the only letters that I saw. So from your perspective, do those letters encompass the discovery that still remains to be done?").)

[3] (ECF No. 313 at 8; Tr. 84: 2–4 ("I mean you both conceded through these informal agreements which have really mucked things up, um, that you still have expert discovery to be done."); ECF No. 313 at 93; Tr. 93: 11–13 ("And then as I indicated at the start of the hearing, I think you all have mucked up these issues with your informal discovery extensions.").)

II.   Rule 26(c)

Rule 26(c) provides, in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery.

Fed. R. Civ. P. 26(c)(1)(A).

III.   Rule 29(b)

Relevant here, Rule 29(b) provides: "[u]nless the court orders otherwise, the parties may stipulate that . . . other procedures governing or limiting discovery be modified--but a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery, for hearing a motion, or for trial." Fed. R. Civ. P. 29(b).

IV.   Rule 45(d)

Relevant here, Rule 45(d) provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

**Standard**

Under Federal Rule of Civil Procedure 72(a), a district court is required to "consider timely objections [to a nondispositive order from a magistrate judge] and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous

or contrary to law."). "Under Rule 72, a district court is 'required to 'defer to the magistrate judges ruling unless it is clearly erroneous or contrary to law.'" *Raytheon Co. v. Cray, Inc*., No. 2:16-MC-898-DAK, 2017 WL 823558, at *2 (D. Utah Mar. 2, 2017) (quoting *Allen v. Sybase, Inc*., 468 F.3d 642, 658–59 (10th Cir. 2006)). "The 'clearly erroneous' standard under Rule 72(a) applies to factual findings." Id. (citation omitted). "In order for a district court to overturn a magistrate judge's decision as clearly erroneous, the court must be left with a 'definite and firm conviction that a mistake has been committed.'" Id. (citation omitted). "Under the 'contrary to law' standard, the district court conducts a plenary review of the magistrate judge's purely legal determinations, setting aside the magistrate judge's order only if it applied an incorrect legal standard." Id. (citation omitted).

## Analysis

As an initial matter, the court notes that both parties are represented by sophisticated counsel. The court further notes that Alarm.com, in its motion for protective order to the Magistrate Judge, moved the court for relief under a single rule—rule 26(c)(1). (*See* ECF No. 295 at 2 ("Alarm.com respectfully moves the Court, under Fed. R. Civ. P. 26(c)(1), for a protective order prohibiting Vivint from seeking . . . expert reports and briefing from [the Delaware litigation].").) Whether Alarm.com may have been entitled to the relief they seek under a rule other than Rule 26(c) is therefore not relevant to the present dispute.

As explained below, because the Magistrate Judge's Order was neither clearly erroneous nor contrary to law, the court OVERRULES Alarm.com's Objection.

The court addresses (I) Alarm.com's standing argument; (II) Alarm.com's argument that Vivint's "narrowed" request from SecureNet constitutes "an untimely new request;" (III) Alarm.com's argument that the documents are not in the possession or custody of SecureNet;

11

and (IV) Alarm.com's argument that a protective order should issue because "the requested expert reports and briefs are not relevant to any claim or defense in this case."

I.     Standing

The Magistrate Judge's Order provided that "Defendant lacks standing to bring the present motion." (ECF No. 312 at 5.) Alarm.com argues that the Order "is contrary to law" because "Alarm.com has standing because it is *a party* in this case." (ECF No. 315 at 11 (emphasis in original) (citing Fed. R. Civ. P. 26(c)(1).) The Order is not contrary to law because the Magistrate Judge, after stating that Alarm.com lacked standing, nevertheless resolved the parties' discovery dispute on "the substantive merits." (ECF No. 312 at 6 ("Notwithstanding the court's misgivings that a protective order is the appropriate motion before us, the substantive merits of Defendant's general objection to the third-party subpoena fail to justify entry of a protective order.").) In order for this court to sustain Alarm.com's Rule 72(a) objection, Alarm.com must establish that the Order's resolution of the dispute on the substantive merits was contrary to law.

II.     Alarm.com's Argument that the Subpoena Constituted an Untimely New Request

In its Motion to the Magistrate Judge, Alarm.com argued that "Vivint's request is not covered by its subpoena and is therefore an untimely new request." (ECF No. 295 at 3.) This is so, Alarm.com argued, because "[f]act discovery closed on December 7, 2018, and Vivint did not preserve such a request in its December 5, 2018 letter regarding outstanding discovery." (ECF No. 295 at 3.)

In her Order, the Magistrate Judge found "the third-party subpoena timely" because it "was sent on November 9, 2018, well before the official close of fact discovery." (ECF No. 312 at 6.)

12

Alarm.com argues in its Objection to this court that the Magistrate Judge's Order "fails to recognize that, while the parties agreed that Vivint could pursue *the Subpoena* after the close of discovery, they did not agree that Vivint could pose *entirely new requests* to SecureNet." (ECF No. 315 at 14 (emphases in original).) Alarm.com argues that "Vivint remains unable to point out any Subpoena request that calls for the Delaware Materials." (ECF No. 315 at 14.) In response, Vivint argued that it "identified several requests in the subpoena that call for the [Delaware] Materials." (ECF No. 321 at 14.) The court has reviewed the fourteen requests contained in the subpoena. (*See* ECF No. 295-2 at 6–7.) The court agrees with Alarm.com that it is unclear how the Delaware Materials are responsive to the requests contained in the subpoena. But as explained below, even assuming that the Delaware Materials are not responsive to the subpoena, Alarm.com has not shown that the Magistrate Judge's decision was contrary to law or clearly erroneous.

Alarm.com fails to recognize that the parties were required under the Federal Rules of Civil Procedure to seek court approval to extend discovery passed the deadline set by the court's scheduling order. Rule 29(b) provides, in relevant part: "[u]nless the court orders otherwise, the parties may stipulate that . . . other procedures governing or limiting discovery be modified--but a stipulation extending the time for any form of discovery *must* have court approval if it would interfere with the time set for completing discovery . . . ." Fed. R. Civ. P. 29(b) (emphases added). "Rule 45 subpoenas are discovery devices subject to the Court's scheduling order as well as applicable rules of procedure." *Taylor v. Grisham*, No. 1:20-CV-00267-JB-JHR, 2020 WL 3172708, at *1 (D.N.M. June 15, 2020). Thus, "under a plain reading of Rule 29, parties are allowed to agree to extend the time period" for responding to subpoenas "as long as such agreements do not interfere with the time set for completing discovery." *C.f.*, *Janis v. Nelson*,

No. CR 09-5019-KES, 2009 WL 5216898, at *8 (D.S.D. Dec. 30, 2009).

Here, Alarm.com admits that "the parties agreed that Vivint could pursue *the Subpoena* after the close of discovery . . . ." (ECF No. 315 at 14 (emphases in original).) Lacking court approval, the parties' agreement was, by definition, extrajudicial. This makes resolution of the present dispute difficult and allowed the Magistrate Judge considerable discretion on how to resolve the dispute.

What is clear is that Alarm.com has not explained how Vivint's "untimely request" to SecureNet constituted a burden to Alarm.com under Rule 26(c). How could it? Alarm.com, like Vivint, engaged in fact discovery passed the discovery deadline. Alarm.com cannot argue that it was burdened simply by virtue of the fact that Vivint made an untimely request on SecureNet.

What Alarm.com is actually doing is asking the court to do one of two things. Either it is asking the court to sanction Vivint for failing to obey the scheduling order, or it is asking the court to find that the parties entered into an extrajudicial agreement, and is asking this court find that the Magistrate Judge clearly erred by failing to impose a sanction for Vivint's failure to adhere to the terms of this agreement. As explained below—based on the posture of this case, and the governing Rule 72(a) standard—the court declines to do either.

Rule 16(f) provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). In the court's view, Rule 16(f), rather than Rule 26(c), would have been a better mechanism to address Vivint's having made an "untimely new request." (ECF No. 295 at 3.) Alarm.com is represented by sophisticated counsel. Alarm.com did not move under Rule 16(f), so the court declines to issue any order under Rule 16(f).

Alarm.com is also, in essence, arguing that the Magistrate Judge clearly erred by not holding Vivint to the terms of the parties' extrajudicial agreement. But as discussed above, under Rule 29, any agreement that interferes with the time set for completing discovery must have court approval. Because the parties never received court approval, the agreement that Vivint could pursue the Subpoena after the close of discovery was invalid at the outset. The question for this court is—even assuming the parties formed a definite agreement, and assuming Vivint breached the terms of that agreement—whether the Magistrate Judge clearly erred by failing to issue a protective order based on Vivint's breach.

Based on this court's research, there is little, if any, authoritative guidance establishing the proper remedy for the unique circumstances this case presents. The rules do not contemplate that parties will engage in any fact discovery passed a court-imposed deadline based only on a stipulation. The rules do not allow the parties, without court approval and passed a court-imposed deadline, to engage in fact discovery to the extent the parties did in this case. (*See* ECF No. 295-9 at 2.)

What is clear is that "magistrates are afforded broad discretion in resolving discovery disputes . . . ." *Kozak v. Office Depot, Inc.*, No. 16-CV-943, 2020 WL 913750, at *2 (W.D.N.Y. Feb. 24, 2020). By engaging in such extensive fact discovery passed the discovery deadline without court approval, the parties forced the Magistrate Judge to wade into unchartered territory to resolve their dispute. Even assuming Vivint breached the terms of the (extrajudicial) agreement, the court cannot conclude that the Magistrate Judge clearly erred in declining to issue a protective order because it was within her discretion to decide that the terms of a stipulation that was void *ab initio* were unenforceable.

If Alarm.com were entitled to a protective order solely on the basis that Vivint's

narrowing of the SecureNet subpoena constituted an "untimely new request," much of the discovery that occurred passed the fact discovery deadline could also be subject to challenge. The Magistrate Judge, in the exercise of her discretion, may have decided that the interests of judicial economy weighed in favor denying Alarm.com's Motion for Protective Order in order to prevent opening a pandora's box of other "untimely" discovery challenges.

III.    <u>Alarm.com's Argument that the Documents are Not in the Possession or Custody of SecureNet</u>

In its Motion to the Magistrate Judge, Alarm.com argued that "the documents are not in the possession of custody of SecureNet. It also lacks control over the documents as it does not have 'the legal right to obtain the subject documents on demand' from counsel due to the *SecureNet* protective order." (ECF No. 295 at 3 (quoting *Gottlieb v. Wiles*, 143 F.R.D. 241, 252 (D. Colo. 1992).) According to Alarm.com, "[t]he Delaware court entered [a] Stipulated Protective Order on July 13, 2017." (ECF No. 295-1 at 3.) Relevant here, the Protective Order provides that "[p]rotected Information shall not be distributed, disseminated or otherwise produced by a Receiving Party, except for transmission to qualified recipients, without the written permission of the producing party, or, in the alternative, by further order of the Court." (ECF No. 295-10 at 17.)

The Magistrate Judge rejected Alarm.com's argument, finding that "Plaintiff submitted a declaration from SecureNet's President . . . confirming SecureNet's ability to comply with the subpoena." (ECF No. 315-2 at 7.)

In its objection to this court, Alarm.com argues that "[w]ithout dispute, SecureNet itself has neither possession nor custody of the documents. They are in the possession of SecureNet's outside counsel and subject to Delaware District Court's confidentiality order." (ECF No. 315 at 14.) Alarm.com also argued that "SecureNet itself *cannot* obtain [the documents] at all, let alone

'on demand', because to do so would violate the Delaware order" and argued that "[t]he documents are not obtainable from SecureNet under Rule 34(a)(1)." (ECF No. 315 at 14; *see also* 315 at 13 ("A subpoena pursuant to Fed. R. Civ. P. 45 and 34 is expressly limited to documents in the 'possession, custody, or control' of the respondent." (citing Fed. R. Civ. P. 34(a)(1)).

Rule 34(a)(1) provides that "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample," among other things, "designated documents," "in the responding party's possession custody, or control." Fed. R. Civ. P. 34(a)(1)(A). "Rule 34 itself is limited to parties to the action." 8A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2204. "[B]ut the 1991 amendment to Rule 45 allows a virtually identical procedure to obtain material from nonparties." *Id*. The 1991 amendment provides, in relevant part: "The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45, advisory committee notes, 1991 Amendments.

The court agrees with Alarm.com that under Rule 45, a subpoena is limited to documents in the possession of the respondent. But the appropriate mechanism to challenge the subpoena on the grounds that SecureNet does not possess the Delaware Materials is through Rule 45—not Rule 26(c).

What Alarm.com is really arguing is that the Delaware Materials are subject to the Delaware District Court's confidentiality order, and that any production of those materials by SecureNet would violate that order. Rule 45(d)(3)(A)(iii) is the appropriate rule to make this challenge. Relevant here, Rule 45(d) provides that "[o]n timely motion, the court for the district

where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Alarm.com, as a party to the protective order, would almost certainly have standing to quash the subpoena in the district where compliance is sought. *See* 8A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2459 ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought. This personal right or privilege standard has been recognized in numerous cases.").)

The question for this court becomes whether the Magistrate Judge's decision that Alarm.com "failed to demonstrate the requisite annoyance, embarrassment, oppression, or undue burden or expense" based on its argument that SecureNet does not possess the Delaware Materials was contrary to law. The court holds that the Magistrate Judge's decision was not contrary to law because Alarm.com failed to meet its burden of demonstrating how it would be unduly burdened simply by virtue of the fact that SecureNet does not formally possess the documents at issue.

IV.    Alarm.com's Arguments Related to Relevance

In its Motion to the Magistrate Judge, Alarm.com argued that "the requested expert reports and briefs are not relevant to any claim or defense in this case." (ECF No. 295 at 3.) In response to this argument, Vivint argued to the Magistrate Judge that "Alarm.com's analysis of" "a patent license agreement between Alarm.com and Vivint" "is highly relevant to at least each party's damages analysis where that very same agreement is critical to reasonable royalties." (ECF No. 296 at 2.) At oral argument, Vivint argued to the Magistrate Judge that "Vivint, if it

proves infringement, can receive damages of no less than a reasonably royalty," and argued that "the rates paid by the licensee for use of other patents comparable to the patents in suit should be considered." (ECF No. 313 at 74–75.)

The Magistrate Judge rejected Alarm.com's argument, reasoning that "[t]he court agrees with Plaintiff that at this point it is premature to find that the evidence sought is irrelevant to the claims and potential damages."[4] (ECF No. 315-2 at 7.)

In its objection to this court, Alarm.com argued that it "demonstrated good cause for the issuance of a protective order in that the Delaware Materials, which concern a **_different litigation_** about **_different patents_** and an expert **_not retained in this action_**, are entirely irrelevant here." (ECF No. 315 at 12. (emphases in original).) Alarm.com argues that "[t]he test for determining good cause [under Rule 26(c) is whether the burden the moving party faces without the protective order outweighs the burden the non-moving party would face if the order were issued." (ECF No. 315 at 11.) Alarm.com argues that the Magistrate Judge's order is contrary to law because it "fails to apply this balancing test." (ECF No. 315 at 12.)

Vivint argues that Alarm.com's expert in the SecureNet case conducted investigation and "analysis of a license agreement entered into between Alarm.com and Vivint that will likely be the central focus of the parties' reasonably royalty analysis in this case." (ECF No. 321 at 11.)

"Rule 26(c) provides that for good cause shown, the court 'may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Rofail v. United States*, 227 F.R.D. 53, 54 (E.D.N.Y. 2005). "It is the party seeking a protective order who has the burden to show good cause for a protective order."

---

[4] Nothing in the Delaware district court's confidentiality order prevented Magistrate Judge Romero from making this finding. (*See* ECF No. 295-10 at 22 ("By entering this order and limiting disclosure of information from this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.").)

*E.E.O.C. v. Kansas City S. Ry.*, No. 99-2512-GTV, 2000 WL 33157343, at *1 (D. Kan. Aug. 16, 2000) (citation omitted). "To establish good cause, that party must submit 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Id.* (quoting *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). "*If* the movant successfully establishes good cause for protection, the court *may then* balance the countervailing interests to determine whether to exercise discretion and grant the order." *Id.* (emphases added) (citation omitted); *see also Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453, 455 (N.D.N.Y.) ("if the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order.")).

   "District courts review a magistrate judge's relevance determinations for 'abuse of discretion.'" *Estate of Najera-Aguirre v. Cty. of Riverside*, No. EDCV18762DMGSPX, 2019 WL 6898944, at *2 (C.D. Cal. Aug. 22, 2019) (citation omitted). "A magistrate judge abuses her discretion 'only when her decision is based on an erroneous conclusion of law or where the record contains no evidence on which she rationally could have based that decision.'" *Id.* (citation omitted).

   Here, the Magistrate Judge considered the parties' arguments and concluded that Vivint had presented sufficient argument to show that the materials may be relevant to "potential damages." (*See* ECF No. 315-2 at 7.) In concluding that the materials may be relevant, the Magistrate Judge implicitly weighed the parties' arguments and found that Alarm.com had not met its burden of establishing that the Delaware Materials lacked any relevance to the case. Alarm.com has not demonstrated that the Magistrate Judge's decision was based on an erroneous conclusion of law. What's more, the court has reviewed the record and concludes that the

Magistrate Judge was presented with sufficient evidence on which she rationally could have decided that the Delaware Materials may be relevant to "potential damages." Alarm.com has not established that the Magistrate Judge abused her discretion. Nor has Alarm.com established that the Order was clearly erroneous or contrary to law.

Conclusion

For the foregoing reasons, the court OVERRULES Alarm.com's Rule 72(a) objection as it relates to Alarm.com's Motion for Protective Order. Thus, Alarm.com is not entitled to a protective order under Rule 26(c).

In this court's view, Vivint's receipt from SecureNet of the information that Vivint requested pursuant to the November 9, 2018, subpoena is subject to the Delaware Protective Order—meaning Vivint is precluded from disseminating the contents of that information publicly.

DATED August 6, 2020.

BY THE COURT:

_____

Clark Waddoups
United States District Judge